779 P.2d 422

**Mary Elizabeth CARR, Plaintiff–Respondent,**

v.

**Terry Arthur CARR, Defendant–Appellant.**

**No. 17370.**

Court of Appeals of Idaho.

Aug. 31, 1989.

---

C.J. Hamilton, Hamilton & Hamilton, Coeur d'Alene, for defendant-appellant.

Sue S. Flammia, Flammia & Solomon, Coeur d'Alene, for plaintiff-respondent.

WALTERS, Chief Judge.

This case involves a controversy over distribution of community property pursuant to a divorce decree. Terry Carr challenges a decision of the district court upholding a magistrate's order of final accounting of business property jointly owned by Terry and his ex-wife, Elizabeth Carr. Specifically, Terry argues that the magistrate presiding at the final accounting should not have awarded Elizabeth compensation for Terry's use of the couple's community property prior to its sale. Terry also contends that the magistrate erred in awarding Elizabeth an interest in property allegedly diverted from the community by Terry. Finally, Terry submits that the magistrate should not have ordered him to pay all of the taxes on the couple's business property during the time he operated the business as a sole proprietor. For the reasons explained below, we affirm that portion of the district court's order upholding the magistrate's judgment awarding Elizabeth compensation for Terry's use of the couple's jointly owned business property, and the magistrate's order requiring Terry to pay the taxes associated with the couple's business. However, we reverse that portion of the district court's order dealing with Terry's alleged diversion of community assets. We remand this case to the magistrate division for a factual determination consistent with our opinion regarding the diversion of assets.

This case involves yet another dispute arising from the divorce of Terry and Elizabeth Carr in 1981. *See Carr v. Magistrate Court of the First Judicial District*, 108 Idaho 546, 700 P.2d 949 (1985); *Carr v. Carr*, 116 Idaho 754, 779 P.2d 429 (Ct. App.1989); *Carr v. Carr*, 108 Idaho 684, 701 P.2d 304 (Ct.App.1985). The essential facts of this case are as follows. The Carrs' divorce decree, entered on December 22, 1981, provided for unequal distribution of the couple's community property, including their business, the Husky Port Truck Stop located near Post Falls. Distribution of the truck stop property, valued at $761,000, was deferred beyond the date of the decree so that the business could be sold. Elizabeth was ordered to receive the first $4,846 from the proceeds of the sale of the business, after which the balance was to be divided equally. Terry was given a sixty-day period from the date of the decree to purchase Elizabeth's interest. During this time, the couple was to remain in joint control of the business.

Problems quickly arose between the parties after entry of the divorce decree and pending sale of the business. Elizabeth alleged that Terry physically and verbally threatened her at work; she eventually hired a bodyguard to protect her while on the job. In addition, the business began experiencing financial difficulties. In December, 1981, a check written by Terry for $82,000 to Husky Oil Company, the business' main fuel supplier, was not paid due to insufficient funds. The Husky Oil Company subsequently refused to sell fuel to the Carrs except on a cash basis. As a result, Terry closed the fuel section of the business for twenty-eight days, beginning on January 13, 1982.

Due to the deteriorating conditions of the business, the parties entered into a stipulation on February 4, 1982, whereby Elizabeth agreed to no longer work at the truck stop and Terry assumed full control of the operation until a sale could be arranged. The couple also stipulated that Elizabeth would be relieved of "any indebtedness" of the business, but would not be entitled to share in any earnings or sales after the date of the stipulation. Elizabeth did, however, reserve the right to assert a claim for "rental value of her share of the community property" after February 1, 1982. The parties also agreed to extend the time in which Terry had to purchase Elizabeth's share of the business until June 17, 1982.

In June, 1982, Terry informed Elizabeth that he would not be purchasing her share of the business. However, the business remained unsold.[1] On July 9, 1982, Elizabeth filed a motion for payment of rent or profit with the magistrate division, asking that, beginning after February 1, 1982, Terry be required to pay her rent for his use of her share of the business, or in the alternative, that Terry be required to pay her one-half of the business' monthly profits. On October 6, 1982, Elizabeth filed a second motion with the magistrate division, stating that she elected to receive "interest," or rental compensation, as the value of her share of the truck stop property,

rather than to receive a share of the profits from operation of the truck stop. She asserted that such rental compensation, calculated at fourteen percent per annum, would be approximately $4,600 per month, or $36,000, for the period from February 1 to September 30, 1982.

Pursuant to Elizabeth's first motion, on October 7, 1982, the magistrate ordered Terry to pay Elizabeth one-half of the business' profits beginning on August 1, 1982, and for each month thereafter until the property was sold (first order). In his order, the magistrate also concluded that Elizabeth was not entitled to rental compensation for the period from February 1 to July 31, 1982. On December 23, 1982, the magistrate ruled on Elizabeth's second motion. Finding that, to date, Terry had paid Elizabeth nothing for his use of her share of the truck stop property, the magistrate ordered Terry to pay Elizabeth monthly rental compensation of $1,200 beginning in January, 1983, and continuing until the property was sold (second order).

Terry made timely payments of rent to Elizabeth for his use of the truck stop property from January, 1983, until the property was sold in December, 1983. By a separate order dated February 28, 1984, the magistrate presiding over the distribution of the truck stop property ordered Terry to pay all of the real and personal property taxes on the business which had accrued from the date of the parties' stipulation, February 4, 1982, through the date of sale. The court's order was based, in large part, on the parties' stipulation which required Terry to assume the indebtedness of the business.

A final accounting trial was conducted before a different magistrate from June 10 through June 14, 1985. Based upon the evidence adduced at this trial, the magistrate reached the following conclusions. First, the magistrate concluded that, in addition to her share of the sale proceeds of the truck stop property, Elizabeth was entitled to an additional $106,500 in compensation from Terry. The magistrate's conclu-

---

1. Terry's failure to sell the business was due, in part, to his reluctance to sign a covenant not to compete with prospective purchasers. *See Carr v. Carr,* 108 Idaho at 687, 701 P.2d at 307.

sion was based upon circumstantial evidence indicating that Terry had diverted at least $213,000 in assets from the business, without the knowledge or consent of Elizabeth, and without applying this amount to an identical debt owed to Husky Oil Company. Second, the magistrate decided that Elizabeth was entitled to receive rental compensation in the amount of $24,000 for Terry's use of the business property between February 1, 1982 and January 3, 1983. The magistrate's decision was in contravention to the prior magistrate's first order concluding that Elizabeth was entitled to receive profits from the business pending its sale. Finally, the magistrate held that Elizabeth was entitled to one-half of the equity value of real property allegedly owned by Terry and located on Millview Lane in Coeur d'Alene. The magistrate based his conclusion on evidence which suggested that Terry was the purchaser of the property, even though the property was ostensibly acquired by Terry's sister and brother-in-law.

Both parties appealed to the district court from the magistrate's judgment of final accounting. Terry challenged the magistrate's decisions regarding Terry's alleged diversion of funds from the business, his alleged ownership of the Millview Lane property, and the magistrate's award of rental compensation to Elizabeth for Terry's use of the truck stop property. Terry also contested the magistrate's decision of February 28, 1984, requiring him to pay all of the business' taxes. In a memorandum opinion and order, the district court affirmed the magistrate's decision regarding Terry's diversion of funds from the business, and the magistrate's decision awarding Elizabeth one-half equity ownership in the Millview Lane property. The district court also affirmed the magistrate's independent order requiring Terry to pay the taxes on the business. However, the district court concluded that Elizabeth was only entitled to receive rental compensation for Terry's use of the truck stop property during the period from August 1, 1982 to January 3, 1983. The district judge based his conclusion on the fact that the prior magistrate had already concluded that Eliz-

abeth was not entitled to compensation from February 1 to July 31, 1982. The district court affirmed that portion of the magistrate's order awarding Elizabeth rental compensation in the amount of $12,000.

In 1986, Terry was convicted of tax evasion and fraud and was sentenced to serve nine years in a federal penitentiary. A federal tax lien in the amount of $690,000 was later filed against his real and personal property. As a result of his change in circumstance, Terry filed two motions to reduce or to eliminate his child support obligation to the couple's minor child. During one of these proceedings, Terry admitted being owner of the Millview Lane property. *See Carr v. Carr*, 116 Idaho 754, 779 P.2d 429, (Ct.App.1989). This appeal by Terry followed.

I

## STANDARD OF REVIEW

We first note our standard of review. On appeal from an order of the district court reviewing a magistrate's findings and conclusions, we examine the record of the trial court independent of, but with due regard for, the district court's intermediate appellate decision. *Cole v. Kunzler*, 115 Idaho 552, 768 P.2d 815 (Ct.App.1989). Findings of fact made by a trial court will not be set aside on appeal if they are supported by substantial and competent, though conflicting, evidence. *Shurtliff v. Shurtliff*, 112 Idaho 1031, 739 P.2d 330 (1987). As to questions of law, we will exercise free review. Based upon our review of the magistrate's findings and conclusions, we will affirm or reverse the district court's appellate decision accordingly. *Matter of the Estate of Bradley*, 107 Idaho 860, 693 P.2d 1062 (Ct.App.1984).

II

## RENTAL COMPENSATION

We first discuss Terry's claim regarding the award of rental compensation to Elizabeth. Terry contends that the magistrate's second order precludes Elizabeth

from receiving rental compensation for Terry's use of the truck stop property during the period from August 1, 1982 through January 3, 1983. Specifically, Terry asserts that, pursuant to the magistrate's order, Elizabeth was entitled to receive rental compensation after January 3, 1983, but not before. Therefore, he contends that the magistrate presiding at the final accounting lacked jurisdiction to award Elizabeth compensation prior to this date.

We disagree. Generally, all provisions of a divorce decree are enforceable by the trial court, including orders to effectuate property distribution between the parties. *See Phillips v. District Court of the Fifth Judicial District*, 95 Idaho 404, 509 P.2d 1325 (1973); *Carr v. Carr*, 108 Idaho at 688 n.2, 701 P.2d at 308 n.2. In the present situation, the magistrate presiding at the final accounting had jurisdiction to *enforce* the property division of the truck stop property, including effectuation of the couple's agreement entitling Elizabeth to be compensated for Terry's use of her property during the period of its pending sale. Neither the magistrate's first nor second order addressed whether Elizabeth was entitled to receive rental compensation from August 1, 1982 to January 3, 1983. Thus, it was within the province of the magistrate presiding at the final accounting to insure that Elizabeth received her rental compensation for this time period. The failure of the prior magistrate to address this issue did not—in any way—affect the authority of the magistrate during the final accounting to enforce the terms of the parties' stipulation regarding use of the truck stop property. Given the parties' stipulation, and the magistrate's exclusive authority to enforce all the terms of their divorce decree, we hold that the magistrate did not err in reaching his decision to award the rental compensation to Elizabeth.[2] We therefore affirm the district court's order entitling Elizabeth to collect rental compen-

sation for Terry's use of the truck stop property from August 1, 1982 to January 3, 1983, in the amount of $12,000.

## III

### DIVERSION OF COMMUNITY FUNDS

■ Next we address the magistrate's award to Elizabeth of one-half of the funds allegedly diverted from the truck stop business by Terry. Terry contends the evidence presented at the final accounting trial did not support the magistrate's conclusion that he had diverted funds from the truck stop business. Specifically, Terry points out that two independent audits conducted by accountants appointed by the magistrate failed to conclusively show that Terry had diverted funds from the truck stop business. Furthermore, Terry contends that, contrary to the magistrate's finding, the debt owed by the truck stop business—including fuel charges owed specifically to Husky Oil Company—was actually reduced during the time in which Terry supposedly diverted funds from the business. As a result, Terry submits that the magistrate's decision was not supported by the evidence adduced at trial.

We agree with Terry's contention. Based upon our review of the record, we cannot conclude that the magistrate's finding that Terry diverted community assets is supported by substantial and competent evidence. The magistrate's decision on this issue is based in large part upon the following. Historically, the truck stop business had been successful and prosperous. However, pursuant to the couple's divorce, circumstances changed. The business' creditors were unaccountably not paid. Subsequently, Terry closed the business for twenty-eight days until Elizabeth agreed to permit him to operate it on his own. After reopening the truck stop, Terry appeared in no hurry to sell the business and divide the

2. In reaching our conclusion, we voice no opinion as to whether Elizabeth should have received rental compensation, in lieu of profits, for the period from February 1 to July 31, 1982. As pointed out in the district court's memorandum opinion and order, the magistrate issuing the first order determined that Elizabeth was not entitled to rental compensation during this period. That order was a final judgment which Elizabeth did not appeal; it is therefore binding upon the parties and precludes Elizabeth from claiming compensation for that time period.

proceeds with Elizabeth. Furthermore, during this period, Terry individually purchased a restaurant in Rathdrum, Idaho, and land adjacent to the truck stop business. However, at the time Terry sold the truck stop, he still owed Husky Oil Company approximately $213,000. From this evidence, the magistrate concluded that Terry had diverted community assets in at least an amount commensurate to the Husky Oil Company debt in an effort to diminish the size of the community estate.

We fail to see how this evidence supports the magistrate's conclusion. The record shows that the debt owed by the truck stop business prior to the divorce was $347,000. According to an audit of the business conducted prior to its sale, this debt had been reduced to $256,000, a $91,000 decrease. Contrary to the magistrate's finding it is entirely logical to assume from these facts that, rather than diverting funds from the truck stop business, Terry had actually utilized truck stop profits in an effort to decrease the business' indebtedness. Furthermore, in reaching his decision the magistrate was unable to determine whether the restaurant or land acquired by Terry had been obtained with community assets. As indicated by the magistrate, Terry never established effective controls of the business' finances, constantly dealing in cash, and leaving few, if any, audit trails. However, Terry's lack of financial accountability does not, by itself, indicate that he purposefully diverted community assets.

We further note that, by awarding Elizabeth one-half of the allegedly diverted funds, the magistrate may have permitted her to indirectly gain a benefit in excess of her proportionate share of the community assets. Pursuant to the couple's stipulation agreement, Elizabeth was relieved of any indebtedness of the business after February 4, 1982. The magistrate's decision apparently allowed her to escape any obligation for the Husky Oil Company debt and still obtain approximately $106,000 in supposedly diverted community assets. However, the parties' stipulation agreement does not establish whether Elizabeth was relieved of pre-stipulation debts, nor does the record clearly indicate that the Husky Oil Company debt was accrued entirely after Terry assumed control of the business. Without a resolution of these issues, we cannot determine whether the magistrate's decision has permitted Elizabeth to be over compensated for her share of the community assets.

In summary, we conclude that the magistrate's factual findings and analysis are not sufficiently definitive to support the ultimate finding that a diversion occurred, or to quantify the diversion. We therefore direct the district court to vacate the magistrate's order of final accounting, and further to remand this case to the magistrate division for a more particularized determination of whether Terry has diverted community assets. In doing so, we offer the following direction. First, the magistrate should specifically determine what, if any, funds were diverted from the truck stop business by Terry. The magistrate should rely on evidence specifically indicating that assets of the truck stop business had been diverted by Terry for his personal use. The magistrate may base his conclusion upon circumstantial evidence that Terry purchased real or personal property during the divorce proceedings, unless this property is already unaccounted for in the parties' division of community assets. Second, the magistrate should determine what affect the parties' stipulation agreement has on Elizabeth's obligation to pay truck stop business debts. Depending upon the court's interpretation of this document, the magistrate may wish to allocate any hidden assets so that Elizabeth does not receive a double benefit from division of the property.

## IV

## MILLVIEW LANE PROPERTY

We now address the magistrate's award to Elizabeth of one-half of the equity value in the Millview Lane property. Terry maintains that the magistrate's conclusion was erroneous, because he was not the record owner of the property in question. Furthermore, Terry contends that ownership of the Millview Lane property

was adjudicated pursuant to the Carrs' divorce decree; therefore, the magistrate at the final accounting was without jurisdiction to decide, upon circumstantial evidence, that Terry was the rightful owner of the property.

We are unpersuaded by Terry's arguments. During proceedings related to Terry's request for modification of his child support obligation, he admitted to being the owner of the Millview Lane property. Presumably, the property was acquired with community funds prior to the date of the Carrs' divorce. Therefore, Terry is precluded, by his own admission, from denying ownership of the Millview Lane property. Because the magistrate has determined that the Millview Lane residence is community property, Elizabeth is entitled to her share of Terry's equity in the property. Generally, community property not divided in a divorce decree is held by the former spouses as tenants in common or joint owners, subject to partition upon demand of one of the parties. *Harrell v. Harrell*, 692 S.W.2d 876 (Tex.1985); *see Noyes v. Noyes*, 106 Idaho 352, 679 P.2d 152 (Ct.App.1984). In this case, Elizabeth is entitled to receive her portion of the equity value as determined by the magistrate in his final accounting. The district court's decision upholding the magistrate's judgment for Elizabeth is therefore affirmed.

## V

### PAYMENT OF TAXES

Terry finally contends that, contrary to the magistrate's conclusion, the couple's stipulation did not require him to assume responsibility for payment of taxes on the truck stop property. However, we need not address this issue because of Terry's failure to frame this issue in the appeal to the district court below. *Cf. Centers v. Yehezkely*, 109 Idaho 216, 706 P.2d 105 (Ct.App.1985) (an appellant may not raise issues in a higher court different from those presented in an intermediate court). Although Terry raised this issue in general terms before the district court, he did not identify any factual or legal error upon which the issue turned. Because this issue was not properly framed before the district court, we decline to address it on appeal. I.A.R. 35(7); *see Jensen v. Doherty*, 101 Idaho 910, 623 P.2d 1287 (1981) (appellant's failure to provide argument concerning his claim is grounds for dismissal). The district court's order, upholding the magistrate's conclusion that Terry must pay the business taxes, is therefore affirmed.

## VI

### RESPONDENT'S CLAIMS

Elizabeth raises several issues on appeal relating to Terry's alleged fraudulent conduct in procuring distribution of the couple's community property, and to the district court's decision denying her rental compensation for Terry's use of the truck stop property from February 1 to July 31, 1982. She urges us to consider these issues, even though they were not raised on cross-appeal, because of the nature and extent of the fraud perpetrated by Terry. Her policy arguments notwithstanding, Elizabeth's failure to file a timely notice of cross-appeal precludes our consideration of these issues. I.A.R. 21.

## VII

### CONCLUSION

In summary, we affirm that portion of the district court's appellate decision concluding that Elizabeth is entitled to rental compensation from August 1, 1982 to January 3, 1983. We also affirm the district court's decision upholding the magistrate's order requiring Terry to pay all of the taxes on the couple's business property during the time he operated it as a sole proprietor. Finally, we affirm that portion of the district court's decision upholding the magistrate's conclusion that Elizabeth is entitled to one-half of the equity value in the Millview Lane property. However, we reverse that portion of the district court's decision entitling Elizabeth to additional compensation because of Terry's alleged diversion of community assets from the truck stop business. We remand the case

to the magistrate division for the purpose of determining whether Terry has, in fact, diverted community funds, and whether Elizabeth is entitled to additional compensation as a result thereof. Because both parties have prevailed in part on this appeal, we award no attorney fees or costs.

BURNETT, J., and BENGTSON, J. Pro Tem., concur.

Court of Appeals of Idaho.

Aug. 31, 1989.

C.J. Hamilton, Hamilton & Hamilton, Coeur d'Alene, for defendant-appellant.

Sue S. Flammia, Flammia & Solomon, Coeur d'Alene, for plaintiff-respondent.