816 P.2d 350

**R.H. CAMPBELL, Plaintiff–Appellant,**

v.

**L.W. CAMPBELL, Defendant–Respondent.**

**No. 18603.**

Court of Appeals of Idaho.

June 27, 1991.

Petition for Review Denied Sept. 27, 1991.

Denman & Reeves, Idaho Falls, for plaintiff-appellant. Reginald R. Reeves argued.

Dunn & Clark, Rigby, for defendant-respondent. Robin D. Dunn argued.

WALTERS, Chief Judge.

Linda and Ron Campbell were married on September 3, 1983, in Logan, Utah. In 1988, Ron moved to Idaho, where he subsequently commenced this action for divorce. Linda remained in Utah, but, by counterclaim, also sought relief in this action. On January 27, 1989, following an evidentiary hearing, a magistrate entered an order dissolving the parties' marriage. In April, 1989, the magistrate entered his findings and conclusions and a final decree granting a divorce to Linda on grounds of extreme cruelty and wilful desertion. The decree awarded an unequal division of property in favor of Linda, and granted her maintenance in the amount $30,000 payable over a five-year period. Ron contends that the maintenance order and the property distribution were based on erroneous findings of fact. He further attacks the legal standards applied by the magistrate in determining Linda's maintenance eligibility and the amount of maintenance ordered. Finally, Ron requests this Court to impose sanctions against Linda for her alleged violation of the Idaho Appellate Rules. As explained below, we affirm in part and re-

verse in part, and remand the case to the trial court.

## FACTS

Prior to the parties' marriage, Linda owned assets of approximately $85,000, consisting of personal belongings and her home in Utah which had an equity of approximately $68,000 and which was subject to a mortgage of $12,000. The parties resided in Linda's home during the marriage. Ron's premarital assets were valued at approximately $37,300, including $17,000 equity in another house. During most of the marriage, both parties worked for the Utah State University Bookstore, Ron in a managerial role and Linda as a clerk. Ron earned an average annual income of approximately $24,000. He additionally received social security payments of $800 per month for himself and for the benefit of his three minor children from a previous marriage, who resided with him. Linda's average annual income was approximately $9,000. Early in the marriage, Ron lost in a foreclosure sale whatever equity he had accumulated in his separate real property.

In 1984, the parties decided to take out a second mortgage on Linda's real property in order to finance some desired improvements to the home, including construction of a spa, refinishing the basement, and installing new carpet. As part of the financing, Linda executed a warranty deed conveying the property to herself and Ron, jointly. Then, as joint grantors, the parties signed a deed of trust securing a principal sum of $33,424.52.[1] In May of 1987, the parties purchased a 1987 Ford Bronco for $10,770. In August, 1987, the parties took out another mortgage on the residence. They executed a new deed of trust securing a sum of $72,717. These proceeds were used, in part, to satisfy the obligation secured by the 1984 deed of trust. The remaining loan money was deposited in the parties' joint checking account at First Interstate Bank. From these funds the par-

ties purchased a 1986 Toyota automobile, a speed boat, and a summer vacation, among other items.

In July, 1987, Linda grew suspicious that her husband was seeing another woman. Extremely distraught, she sought emotional counseling which she thereafter continued on a weekly basis. In January, 1988, Ron announced he was leaving Linda, immediately moved out with his three children, and rented a separate residence for $500 per month. However, Ron soon returned his children to Linda's home. He occasionally visited the children in the evenings and on weekends, although apparently contributing little toward their financial support.

The parties shortly encountered difficulties in keeping current with their mortgage, the terms of which required monthly installments in excess of $1,220, as compared with the monthly payments of $200 under the original mortgage. Consequently, in April of 1988, the parties refinanced the debt, lowering the amount of the monthly installments and extending the period of time for repayment. This third deed of trust secured an indebtedness of $75,429. No cash was distributed. Unfortunately, the mortgage payments remained greater than the parties' incomes allowed them to pay, and the lender threatened to foreclose. Linda resorted to selling her personal property to discharge some of the parties' debts. Ultimately, in July of 1988, Linda suffered a nervous breakdown and was hospitalized for a week. Thereafter, Ron executed a quitclaim deed for the home, conveying title back to Linda in her separate name. In January, 1989, Linda sold the encumbered property, receiving in exchange two building lots valued between $8,000 and $11,000.

## PROCEDURAL POSTURE

In September, 1988, Ron filed for divorce in Jefferson County, Idaho, on grounds of irreconcilable differences. Linda counterclaimed seeking a divorce on grounds of

---

**1.** Presumably, the parties also signed a promissory note obligating each of them, jointly, to repay the loan. However, no such note was made a part of this record. Ron testified that during the marriage he made mortgage payments in excess of $60,000.

wilful desertion and extreme cruelty. She also requested an order of maintenance. The magistrate court determined it had jurisdiction over the case, but invited the parties to submit relevant authority on Utah law applicable to the property issues. However, it appears from the record that both parties chose to rely solely on Idaho authority for the resolution of their respective claims. At the close of the evidence, prior to deciding any of the substantive issues, the magistrate requested the parties to submit proposed findings of fact and conclusions of law. Counsel for each party complied. The magistrate then adopted, verbatim, many of the findings prepared by Linda's counsel. Based upon these findings, the magistrate granted a decree of divorce on the grounds of wilful desertion and extreme cruelty. Citing I.C. § 32–705, the magistrate granted an order of maintenance in the amount of $30,000 "as a form of economic rehabilitation and restitution." The magistrate held that the findings in support of the maintenance order also demonstrated the existence of "compelling reasons" for an unequal division of the marital property under I.C. § 32–712(1), and awarded most of the parties' property to Linda. The magistrate then ordered that each party pay his or her own attorney fees.

The district court affirmed the magistrate's decree. On appeal from that decision, Ron contends that the maintenance order was based on erroneous findings of fact and on misapplication of the law. He also asserts that the property award was in error to the extent the magistrate based the division of assets on the erroneous findings. Finally, Ron submits that Linda violated I.A.R. 11.1 by failing to make a reasonable inquiry into facts asserted at trial and re-asserted on appeal.

## STANDARD OF REVIEW

Our consideration of Ron's claims are guided by the following principles. On appeal from an order of the district court reviewing a magistrate's findings and conclusions, we examine the record of the trial court independent of, but with due regard for, the district court's intermediate appellate decision. *Carr v. Carr*, 116 Idaho 747, 750, 779 P.2d 422, 425 (Ct.App.1989); *Hentges v. Hentges*, 115 Idaho 192, 194, 765 P.2d 1094, 1096 (Ct.App.1988). We will uphold findings of fact made by the magistrate if they are supported by substantial and competent, although conflicting, evidence. I.R.C.P. 52(a); *Shurtliff v. Shurtliff*, 112 Idaho 1031, 739 P.2d 330 (1987). As to questions concerning the application of law, we will exercise free review. *Carr*, 116 Idaho at 750, 779 P.2d at 425. Based upon our review of the magistrate's findings and conclusions, we will affirm or reverse the district court's appellate decision accordingly. *Id.*

## I

### FINDINGS OF FACT

We begin by considering the trial court's request for submission of proposed formal findings before announcing its rulings to the parties. Here, the magistrate postponed its rulings on all of the substantive issues, refraining from giving even the most cursory outline of its decision prior to requesting proposed findings. It is apparent from the record before us that the magistrate adopted—verbatim—many of the findings proposed by counsel for Linda; in particular the magistrate found that Ron had diverted, without Linda's knowledge or consent, sums totaling approximately $30,000 from loan proceeds secured by the equity in Linda's home. This Court and our Supreme Court have cautioned against such a practice, where the trial court adopts verbatim one party's proposed findings without first having given sufficiently detailed directions for their preparation. *See, e.g., Cheney v. Jemmett*, 107 Idaho 829, 693 P.2d 1031 (1984); *Marshall Bros. Inc. v. Geisler*, 99 Idaho 734, 588 P.2d 933 (1978); *Roberts v. Swim*, 117 Idaho 9, 12, 784 P.2d 339, 342 (Ct.App.1989); *Seaport Citizens Bank v. Dippel*, 112 Idaho 736, 735 P.2d 1047 (Ct.App.1987). Although the adoption of one party's proposed findings without change does not constitute reversible error per se, *MH & H Implement, Inc. v. Massey–Ferguson, Inc.*, 108 Idaho 879, 702 P.2d 917 (Ct.App.1985), findings which

are unsupported by the record will not be upheld on appeal. *See Lang v. Lang,* 109 Idaho 802, 711 P.2d 1322 (Ct.App.1985).

Ron does not question the magistrate's characterization of the loan proceeds, deposited into the parties' joint checking account, as Linda's separate property. *See Winn v. Winn,* 105 Idaho 811, 673 P.2d 411 (1983). Nor does he take issue with the magistrate's choice of Idaho law to determine the allocation of the parties' marital property, virtually all of which was acquired in a foreign, common-law property state. Thus, we are not concerned in this appeal with choice of law issues, which would otherwise come into play. *See, e.g., Berle v. Berle,* 97 Idaho 452, 546 P.2d 407 (1976); *Douglas v. Douglas,* 22 Idaho 336, 125 P. 796 (1912). *See also* E. SCOLES & P. HAY, CONFLICT OF LAWS, ch. 14, at 447 (1984); W. BROCKELBANK, THE COMMUNITY PROPERTY LAW OF IDAHO, ch. 5, at 290 (1962). Rather, Ron's appeal challenges the magistrate's factual determinations that he appropriated that property.

Specifically, Ron attacks the magistrate's findings that (1) Ron used Linda's separate property to pay his separate debt of $12,500; (2) Ron diverted $10,770 from funds intended for the purchase of a Ford Bronco vehicle; (3) Ron applied $3,000 of Linda's money towards his obligation to support his children, from another marriage, who were residing with their natural mother; (4) Ron used Linda's funds to retire a $4,000 debt personally incurred by him and that he took for himself funds in the amount of $260; and (5) that Ron received miscellaneous reimbursements for expenditures made from Linda's separate property, and "pocketed" them. As stated above, our task is limited to examining the record to determine whether, as to the individual sums contested, sufficient evidence exists to support to the magistrate's findings.

### 1. The Judgment Debt.

The magistrate entered a finding that Ron had satisfied a separate, premarital judgment debt out of loan proceeds belonging to Linda. As a corollary, the magistrate also determined that the lender disbursed these loan proceeds on October 16, 1984. The sole basis in the record for this finding appears to be the fact that a document verifying that the judgment had been satisfied was recorded on October 18, 1984, immediately following the parties' October 16 execution of the first deed of trust. We observe, however, that the recorded satisfaction of judgment did not identify the date on which the judgment debt had been paid. Nor did Linda offer testimony that Ron had withdrawn such funds from their account or had otherwise retired the judgment debt during their marriage. Ron testified that the judgment debt against him, obtained by a creditor-bank years earlier, was satisfied long before his marriage to Linda. Ron explained that the satisfaction of judgment had gone unrecorded, and thus the debt remained on his credit record until he applied for the loan with Linda. It was then, Ron explained, that he discovered the creditor's omission and immediately contacted an officer from the creditor-bank, who executed and recorded a new satisfaction of judgment on October 18, 1984. This testimony was neither contradicted nor impeached at trial. Such testimony cannot be arbitrarily disregarded. *Dinneen v. Finch,* 100 Idaho 620, 626–27, 603 P.2d 575, 581–82 (1979); *Olsen v. Hawkins,* 90 Idaho 28, 37, 408 P.2d 462, 467 (1965).

We believe that the record contains insufficient evidence from which the trial court reasonably could infer that Ron had satisfied the $12,500 debt from Linda's property. Moreover, contrary to the facts inferred by the magistrate, we find it highly improbable that the parties had received any loan proceeds until after the satisfaction of judgment had been recorded. Although the parties signed the deed of trust on October 16, 1984, the record reveals that the bank did not record its deed of trust until December 28, 1984, nearly two months *after* the satisfaction of judgment was recorded. We find it unlikely that a bank would disburse cash to debtors prior to recording its security interest. Accordingly, we hold that the magistrate's finding that Ron diverted $12,500 of Linda's loan

proceeds to discharge his separate debt was erroneous.

### 2. The Diversion of Funds for the Bronco.

■ We next examine the magistrate's finding that Ron had diverted $10,770 from funds obtained from the second deed of trust secured by Linda's separate property. The trial court determined that Ron withdrew the loan proceeds, intended for the purchase of a Ford Bronco, diverted the funds in his personal checking account for his own use, and then used other community funds to purchase the vehicle. Ron disputes this finding, arguing that the record establishes without contradiction that the Bronco was purchased months before the parties took out the loan secured by the second deed of trust, and that the Bronco was financed through a loan from First Interstate Bank. Having carefully reviewed the record, we agree with Ron's assertion of the facts.

At trial, Linda introduced into evidence two checks, each written for the amount of $10,770. The first check, dated May 23, 1987, was drafted against Ron's personal checking account at Zions First National Bank, and made payable to the automobile dealership. The back of that check indicates it was deposited in the auto dealer's bank account sometime in June, 1987. The second check, dated June 23, 1987, was drawn against the parties' joint account at First Interstate Bank, and made payable to Ron Campbell. The reverse side of that check shows it was deposited into Ron's personal checking account at Zions First. Linda surmised, and the trial court found, that because payments for the Bronco were being automatically deducted from the parties' joint checking account, Ron must have cashed the $10,770 check from First Interstate for himself.

We fail to see how this evidence supports the magistrate's finding that Ron diverted $10,770. The record clearly demonstrates that the financial transactions surrounding the purchase of the Bronco occurred in May and June of 1987. However, the second deed of trust securing the loan—from which Ron purportedly diverted funds—was dated August 4, 1987, over a month *after* the purchase of the Bronco. Thus, the $10,770 drawn from the parties' checking account could not possibly have been traceable to Linda's loan proceeds as found by the magistrate. Moreover, Ron's testimony, consistent with all of the evidence, clearly explains that the parties had secured financing for the Bronco from First Interstate Bank, where they maintained their joint checking account. Because First Interstate did not immediately issue the loan money, Ron wrote a check in May to the dealership from his Zions account, which the dealer agreed to hold. When First Interstate disbursed the funds in June, Ron withdrew the $10,770 from the First Interstate checking account and deposited it in the Zions account. The dealership then deposited its check. Ron further explained that the Bronco was financed through a loan from First Interstate, and that he and Linda had arranged to have the lender automatically deduct the monthly payments from their checking account with that institution. In sum, there is no evidence of any financial gain to Ron, or of any loss either to Linda or to the community. Based upon our review of the record, we cannot conclude that the magistrate's finding—that Ron diverted Linda's separate funds—is supported by substantial and competent evidence. *See Carr*, 116 Idaho at 751–52, 779 P.2d at 426–27. Thus, we conclude the finding was made in error.

### 3. $3,000 Child Support Payment.

Ron does not dispute the fact that Linda's separate funds were used to pay child support arrearage of $3,000—Ron's separate obligation—for the support of his minor children from an earlier marriage. He disagrees with the magistrate's finding that the money was paid without Linda's knowledge or consent. In view of Linda's testimony that she never acquiesced to the payment, we conclude that substantial evidence, albeit conflicting, supports the magistrate's finding, and accordingly, we will not disturb it.

### 4. $4,000 Check to Bank.

■ Ron also asserts that a check to Cache Valley Bank for $4,000 from the

parties' joint checking account did not support the magistrate's finding that Ron had diverted those funds for his own, separate use. The magistrate's finding apparently is based on the existence of the check written to Cache Valley Bank and on Linda's testimony that she was unaware that the parties had any loan obligation to that institution and she had not assented to repaying the debt from her separate property. Linda offered no evidence as to the nature of the indebtedness. Ron testified that he had taken out an interim loan from Cache Valley Bank to repay the parties' increasing community debts. We note that, unless shown to the contrary, expenditures made and indebtedness incurred during the marriage are presumed to be for the benefit of the community. *See Gardner v. Gardner,* 107 Idaho 660, 691 P.2d 1275 (Ct.App.1984). Thus, while the record may show that Linda's separate funds were expended without her consent—negating any intent to make a gift to the community—we conclude that there was insufficient evidence to support a finding that the funds were consumed by Ron, separately, rather than on behalf of the community. Accordingly, we hold that this finding was erroneous.[2] Similarly, evidence consisting of a check drawn on the parties' joint account for $260, together with Linda's testimony that she was unaware of the corresponding expenditure, while sufficient to uphold the magistrate's finding that Linda did not intend to make a gift of the funds to the community, *see id.,* did not support the finding that the funds inured to Ron's separate estate, rather than to the community. We therefore conclude that this finding also was in error.

### 5. *Miscellaneous Reimbursements.*

At trial, Linda presented a series of checks totaling approximately $1,500,

which she testified Ron had written to purchase items for a third party, and for which he had been subsequently reimbursed. She claimed that the funds expended were her separate property, but that Ron "pocketed" the reimbursement rather than return it to the account. Linda offered no evidence to indicate how Ron had used the money. Ron testified that he had used the reimbursement money to pay household debts and ongoing community expenses. From this testimony, the magistrate found that Ron had taken the $1,500 from Linda's separate property for his separate purposes, without Linda's consent. We conclude that this finding, too, was erroneous. Linda's testimony that Ron "pocketed" the money, without more, was supportive of a finding that she did not intend a gift, but was insufficient to establish that Ron had converted the funds into his own separate property.

### SUMMARY

We hold that, because these erroneous findings constituted the basis of the decree insofar as the magistrate relied upon them in determining the "equitable" division of property and the order granting maintenance, the case must be remanded for reconsideration of those awards. *See Ross v. Ross,* 103 Idaho 406, 411, 648 P.2d 1119, 1124 (1982); *Stahl v. Stahl,* 91 Idaho 794, 430 P.2d 685 (1967). Because we are remanding this case, we will address the other issues raised by Ron, for guidance to the magistrate.

### II

### DIVISION OF MARITAL ASSETS

Ron maintains that the trial judge was required to make specific findings on

---

**2.** We note, however, that under Idaho community property law, Linda might be entitled to a credit against the community. *See Ustick v. Ustick,* 104 Idaho 215, 224, 657 P.2d 1083, 1092 (Ct.App.1983). Where the separate funds of one spouse are used for the benefit of the community, that spouse's separate estate is entitled to reimbursement, from the community, of the amount expended absent a clear and convincing showing that a gift of the separate funds was made or intended. As a corollary, however, we

note that proper credit also should be allowed the community for the expenditure of community funds to make the mortgage payments on a spouse's separate property. *See Josephson v. Josephson,* 115 Idaho 1142, 772 P.2d 1236 (Ct. App.1989). Similarly, where the separate funds of one spouse are used to discharge a separate debt of the other, the lending spouse is entitled to be reimbursed from the debtor spouse's separate estate. *Ustick,* 104 Idaho at 224, 657 P.2d at 1092.

the value of the marital property distributed between the parties. In support of his argument, he cites the rule articulated in *Donndelinger v. Donndelinger*, 107 Idaho 431, 690 P.2d 366 (Ct.App.1984), which requires the magistrate to determine the value of the assets *where substantial equality is sought to be achieved. Id.* However, in the present case, the magistrate did not attempt to achieve an equal division of the property, but determined that there were "compelling reasons" warranting an unequal, but otherwise equitable, division of the marital property. *See* I.C. § 32–712; *Hentges v. Hentges*, 115 Idaho 192, 765 P.2d 1094 (Ct.App.1988); *Bailey v. Bailey*, 107 Idaho 324, 689 P.2d 216 (Ct.App.1985). As such, the magistrate was required to enter specific findings identifying the "compelling reasons" upon which he relied to justify the unequal property distribution. *See Lang*, 109 Idaho at 808, 711 P.2d at 1328. The record shows that the magistrate made the requisite findings, and their basis in the evidence has not been questioned on appeal.

■ Consequently, we hold the magistrate did not err in failing to make specific findings as to the *value* of the property distributed. However, as noted above, the case must be remanded for reconsideration of the division of the property upon an "equitable" basis, due to otherwise erroneous findings of fact announced by the magistrate.

## III

## ORDER OF MAINTENANCE

We turn next to Ron's assertion that the magistrate erred in his decision to grant Linda an award of maintenance in the amount of $500 per month for a period of five years for a total of $30,000. Idaho Code § 32–705(1), as in effect at the time of this action, authorized a trial court to grant an order of maintenance where a divorce is granted on the basis of fault,[3] "if [the

court] finds that the spouse seeking maintenance (a) lacks sufficient property to provide for his or her reasonable needs; and (b) is unable to support himself or herself through employment." I.C. § 32–705(1); *McNelis v. McNelis*, 119 Idaho 349, 806 P.2d 442 (1991); *Swope v. Swope*, 112 Idaho 974, 739 P.2d 273 (1987). In appropriate cases, where the trial court makes the requisite findings of fault on the part of the one spouse and of need on the part of the innocent spouse, the court may, in its discretion, issue an order for maintenance in favor of the innocent spouse. I.C. § 32–705(2); *McNelis*, 119 Idaho at 351–52, 806 P.2d at 444–45.

In challenging the maintenance order, Ron initially attacks the magistrate's decision to grant the divorce for fault. He avers that the evidence adduced at trial was insufficient to establish either wilful desertion or extreme cruelty as a grounds for the divorce, and submits that the magistrate should have granted the divorce on the basis of irreconcilable differences. He also contends that the magistrate employed an incorrect legal standard in determining that Linda was qualified to receive maintenance. Further, he maintains that the court abused its discretion in fixing the amount and duration of the award. We address these issues in turn.

### 1. Fault as Grounds for the Divorce.

■ Ron maintains that the trial court erred in granting the divorce for an offense rather than on the ground of irreconcilable differences between the parties, as alleged in his complaint. The magistrate granted the divorce on the dual grounds of wilful desertion and of extreme cruelty. Ron contends that the evidence was insufficient to support a finding on either of these bases. He argues that, because the parties were not separated for at least year one prior to the filing of Linda's counterclaim for divorce on the ground of wilful desertion, the court erred in granting the divorce on that basis. We agree.

---

3. Idaho Code § 32–705 has since been amended to delete fault as a precondition to the allowance of a maintenance award, but allows the court to consider fault as a factor in considering the amount and duration of the maintenance, if granted. *See* 1990 Idaho Sess. Laws, ch. 336, § 1, p. 916.

Wilful desertion is defined by statute as the voluntary separation of one of the married parties from the other with intent to desert. I.C. § 32–606. Idaho Code § 32–609 provides that the desertion must continue for at least one year before it is a ground for divorce. In this case, the magistrate found that Ron abandoned the marital home in January of 1988. However, the fact that Ron's defection from the marriage had persisted for a full year by the time the magistrate entered the dissolution order as of January 27, 1989, is inconclusive; the grounds for the divorce must exist at the time they are alleged. The record indicates that Linda filed her counterclaim alleging wilful desertion in November, 1988. Because the desertion had continued for less than the requisite period of time, we conclude that the trial court erred in granting the divorce for wilful desertion.

■■■■ However, we may uphold the grant of divorce for fault on the alternative ground cited by the magistrate—extreme cruelty. Pursuant to statute, "extreme cruelty" may be found where one spouse inflicts grievous mental suffering upon the other. I.C. § 32–605. Extreme cruelty is a term of relative meaning, the crucial determination being the effect of the conduct on the complaining spouse. *Parks v. Parks*, 91 Idaho 420, 422 P.2d 618 (1967). Whether a spouse's conduct constitutes extreme cruelty is primarily a question of fact to be decided by the trial court. *Shumway v. Shumway*, 106 Idaho 415, 679 P.2d 1133 (1984).

Here, the magistrate found that the cumulative effect of Ron's course of conduct resulted in grievous mental suffering to Linda. In arriving at this determination, the magistrate cited to the evidence of Ron's desertion of and infidelity to Linda; his causing his minor children, with whom Linda had developed strong emotional bonds during the five and one-half years of the marriage, to leave the home; and the financial stress resulting from Ron's desertion and failure to provide sufficient support to the household budget and repayment of their joint indebtedness. The mag-

istrate found that, although Ron may not have intended to inflict such emotional and mental suffering, Linda's nervous breakdown and consequent hospitalization were attributable to his conduct. Upon the record before us, we hold that the magistrate's finding of extreme cruelty is amply supported and thus we will not disturb it. Accordingly, we find no error in the magistrate's granting dissolution of the marriage on the basis of fault rather than on irreconcilable differences.

## 2. *Linda's Inability to Support Herself.*

■■■■ Ron next asserts that the magistrate incorrectly determined Linda's eligibility to receive maintenance. He argues that the magistrate employed an improper legal standard, and also that he erroneously stated Linda's projected income.

It is evident from the memorandum decision and order that the magistrate allowed maintenance based, at least in part, on its finding that Linda "is now far removed from living in the manner she was accustomed to and cannot, realistically, make any reasonable effort *to return to her prior position of property ownership and provide for her reasonable needs linked to such ownership*, without maintenance from [Ron]." [Emphasis added.] The court further determined that,

> [a]lthough [Linda] is capable of supporting herself through employment, without maintenance from [Ron], the support she provides solely from her own wages would be unreasonably low and result in a greatly reduced standard of living *when placed in context with the prior standard of living she enjoyed before she lost most of her property.* [Emphasis added.]

■■■■ In our view, the magistrate applied an improper standard for evaluating Linda's maintenance eligibility. Unlike an award of property, which turns upon the vested property rights of spouses, maintenance is designed solely for the support of the dependant spouse after a showing of need. *Ross*, 103 Idaho at 411, 648 P.2d at 1124; *Jackson v. Jackson*, 87 Idaho 330, 334, 393 P.2d 28, 30 (1964), *overruled on*

*other grounds, Murphey v. Murphey,* 103 Idaho 720, 653 P.2d 441 (1982). The object of a maintenance order is not to restore an innocent party to the financial position enjoyed prior to the marriage, but to secure to that dependent spouse the same comforts and luxuries of life as probably would have been enjoyed had it not been for the enforced separation. Thus, when determining whether a spouse can provide for his or her "reasonable needs," the court is to take into account the standard of living *established during the marriage. See Day v. Day,* 15 Idaho 107, 96 P. 431 (1908); 24 AM.JUR.2D *Divorce and Separation* § 582, at 590 (1983).

Here, the standard applied by the magistrate inappropriately focused upon Linda's financial position existing *prior* to her marriage to Ron. The record clearly demonstrates that her property was encumbered during the marriage, and that the parties consumed the loan proceeds during the marriage. The record further suggests that the parties lived beyond their means during their marriage, consuming their assets as well as their incomes. Such standard of living need not be maintained. *See Day,* 15 Idaho at 107, 96 P. at 431; 24 AM.JUR.2D, *supra,* § 582, at 590. Thus, in evaluating whether Linda is able to meet her "reasonable needs," on remand the trial court should consider what lifestyle would have been warranted in light of the spouses' incomes and resources during the marriage. *Cf.* 24 AM.JUR.2D, *supra,* § 666, at 659.

Ron also contends that the magistrate understated Linda's future income. However, having reviewed the record, we conclude that the magistrate's finding as to Linda's projected income is supported by substantial evidence and thus was not clearly erroneous.

### 3. Amount and Duration of Maintenance.

Once a trial court has made the requisite findings of fault on the part of one spouse, and of need on the part of the other, innocent spouse, the court may, in its discretion, grant an award of maintenance to the innocent spouse. I.C. § 32–705; *McNelis,*

119 Idaho at 351, 806 P.2d at 444; *Ross,* 103 Idaho at 411, 648 P.2d at 1124. On an issue of discretion, the appellate inquiry is multi-tiered: (1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the boundaries of such discretion and consistent with any rules applicable to specific choices; and (3) whether the court made its decision by an exercise of reason. *Hentges,* 115 Idaho at 195, 765 P.2d at 1097. Here, we perceive Ron's challenge as directed at the latter two questions—*i.e.,* whether the magistrate acted within the outer boundaries of its authority as governed by I.C. § 32–705, and whether the decision was based on an exercise of reason.

The statute provides that the order of maintenance must be based on relevant factors, which may include the dependant spouse's resources; the time necessary to secure the education and training required to enable the dependant spouse to find employment; the duration of the marriage; the age and emotional condition of the dependant spouse; the ability of the spouse from whom maintenance is sought to meet his or her own needs while meeting those of the dependant spouse; and the tax consequences to each spouse. I.C. § 32–705(2). In the instant case, the magistrate specifically referenced several of the factors set forth in I.C. § 32–705(2), which it deemed relevant to its decision. Additionally, the magistrate emphasized its consideration of the following factor:

> that the defendant lost her residence and much of her property due to, in large part, (1) the plaintiff's receipt of over $30,000 of the defendant's separate equity, without her knowledge or consent and (2) his physical and financial abandonment of her.... Consequently, in addition to the other reasons expressed herein, *the Court concludes that the ordered maintenance is a form of economic rehabilitation or restitution.* (Emphasis added.)

As noted, the magistrate ordered Ron to pay Linda a total of $30,000 in maintenance over the next five years.

█ The language of I.C. § 32–705(2) apparently permits the trial court to consid-

er other *relevant* factors in determining the amount and duration of a maintenance to be ordered. Thus, our inquiry here is whether "restitution and economic rehabilitation" constituted relevant criteria which the court properly considered in granting maintenance. As we read the magistrate's opinion, it is apparent that the magistrate was treating the maintenance order as a form of restitution of what the magistrate apparently considered Linda's separate property. Although the magistrate used the term "economic rehabilitation," which may in some circumstances be a relevant factor, here the magistrate fashioned a maintenance order with the purpose of effectuating restitution of Linda's separate property. We conclude that, by including restitution as one of the factors on which to base the maintenance order, the magistrate exceeded his authority under former I.C. § 32–705(2).

As instructions to the magistrate on remand, the magistrate should consider whether and to what extent maintenance should be awarded in light of the standard of living of the parties during their marriage, as well as whether maintenance should be awarded when the restitution factor is eliminated from consideration as a relevant factor. However, should the magistrate determine on remand that Ron is indebted to Linda, he may properly consider such indebtedness in the division of the parties' property, or he may enter a money judgment against Ron. *See, e.g., Ustick,* 104 at 215, 657 P.2d at 1083.

Ron also assigns error to the magistrate's determination that he is capable of paying the amount of maintenance ordered. Because we vacate the maintenance order, we need not address this issue except to note that, if the monthly "expense" account of $400 provided by his employer is for business expenses, as opposed to personal expenses, that amount also should be excluded as income.

## IV

### I.A.R. 11.1 SANCTIONS

Finally, Ron urges this Court to impose sanctions against Linda for making certain assertions in her appellate brief without first inquiring into their factual basis. Ron bases his request on Idaho Appellate Rule 11.1. That Rule mandates that every attorney sign the briefs he or she submits to the appellate court, certifying that, "to the best of his [or her] knowledge, information and belief *after reasonable inquiry* it is well grounded in fact." (Emphasis added.) *Cf. Durrant v. Christensen,* 117 Idaho 70, 785 P.2d 634 (1990) (addressing comparable I.R.C.P. 11). The Rule further directs the appellate court to impose sanctions where it determines that a violation has occurred.

Ron argues that because the trial court proceedings demonstrated that certain factual allegations were unfounded, Linda was obligated to further inquire into their veracity prior to reasserting those facts in her appellate brief. Specifically, Ron refers to Linda's assertions that he had paid a prior, separate judgment debt of $12,500 using her separate funds, and that he had diverted $10,770 from her separate funds which were intended for the purchase of a Ford Bronco. As discussed above, these findings were not grounded upon substantial evidence in the trial record, and accordingly we have vacated the orders which rested upon them. The question before us here, however, is whether Linda's assertion of these facts on appeal subjects her to sanctions under I.A.R. 11.1. We hold that it does not.

Ron argues that his trial testimony adequately informed Linda of the true facts and should have prompted her to further investigate her allegations against him. In essence, Ron suggests that the "reasonable inquiry" requirement of I.A.R. 11.1 obligated Linda to refrain from asserting matters which he contends were disproved at trial, despite the trial court's findings that those facts were true. In support of his contentions, Ron has filed with this Court the affidavit of the former judgment creditor, verifying that the debt had been previously satisfied as testified to by Ron. However, we reject Ron's sugges-

tion that I.A.R. 11.1 permits the introduction on appeal of matters which should have been brought before the trial court. An appellate court is not the place for factual assertions; factual assertions must be made and proved before the trial court. *Schneider v. Curry,* 106 Idaho 264, 267, 678 P.2d 56, 59 (Ct.App.1984). Consequently, we will not consider the affidavit.

We view the basis of Ron's sanctions request as an evidentiary matter which we already have dealt with above. The promulgation of I.A.R. 11.1 was not intended to duplicate our power to review and correct erroneous factual findings of the trial court. Rather, it is to be applied narrowly, focusing on discrete abuses of the appellate process. *Cf., Sweat v. Hansen,* 116 Idaho 927, 782 P.2d 50 (Ct.App.1989) (addressing I.R.C.P. 11). Moreover, we note that the magistrate in this case expressly permitted post-trial submission of evidence. It was not until the appellate phase of this litigation, however, that Ron and his counsel conducted the "reasonable inquiry" with which he here attempts to burden his opposition. It is thus plain from this record that sanctions based on a violation of our appellate rules of procedure are inappropriate. The request for an imposition of sanctions is therefore denied.

## V

## CONCLUSION

In conclusion, the determinations of the district court regarding the order of maintenance and awards of property are reversed. These matters are remanded to the trial court for reconsideration consistent with our opinion. To the extent the district court affirmed the magistrate's grant of the divorce on grounds of extreme cruelty, that decision is further upheld. The request for sanctions is denied. Costs to the appellant, Ron Campbell. No attorney fees on appeal.

SWANSTROM, J., concurs.

SILAK, Judge, concurring specially:

I concur fully in all parts of this opinion except for Part II, in which I concur in the result only. I agree that this case must be remanded to the magistrate for reconsideration of the division of property upon an "equitable" basis. I write separately, however, to express my concerns regarding the implication that a magistrate need not make findings of fact regarding the value of community property items when making an unequal, but otherwise equitable, division of community property. Even if the lack of findings regarding the value of the community property technically does not constitute error, I believe the magistrate should be encouraged to make such findings on remand. I.C. § 32–712(1)(a) provides that,

> [u]nless there are compelling reasons otherwise, there shall be a substantially equal division in *value,* considering debts, between the spouses. [Emphasis added.]

Absent findings as to the value of items of community property, it cannot be determined whether a division of community property is equal or unequal, equitable or inequitable. If either of the Campbells subsequently appeal from the magistrate's judgment on remand, this Court may be unable to resolve any community property issues without remanding again, specifically for findings as to the value of the items of community property.

In *Donndelinger v. Donndelinger,* 107 Idaho 431, 690 P.2d 366 (Ct.App.1984), the magistrate held that the division of community property should be substantially equal, and the husband appealed arguing that the result under the final decree was a substantially unequal division. We remanded for additional findings as to the property valuation, because we were unable to determine whether substantial equality had been achieved:

> In *Pope v. Intermountain Gas Co.,* 103 Idaho 217, 646 P.2d 988 (1982), our Supreme Court held that a lack of findings may be disregarded by an appellate court only if the record is clear and yields an obvious answer to the relevant factual question. Absent those circumstances, a failure to make findings of fact on material issues affecting the

judgment requires the judgment to be set aside and the case remanded.

*Donndelinger* at 437, 690 P.2d at 372.[4] We later cited this case in support of the proposition that findings as to value are necessary even where the magistrate finds compelling reasons for an unequal distribution of the community:

> Although the trial court "must find the value of each material asset," this requirement is "limited to assets and debts upon which the court has been furnished substantial and competent evidence of the value or amount." *Donndelinger*, 107 Idaho at 437, [690] P.2d at 372.

*Lang v. Lang*, 109 Idaho 802, 805 n. 2, 711 P.2d 1322, 1325 n. 2 (Ct.App.1985).

Whether an appeal involves a challenge to an allegedly unequal division where substantially equal division was sought by the trial court, or it involves a challenge to a divorce decree seeking to implement an unequal division, the same reasoning should apply with regard to findings of fact by the trial court. Trial courts, when sitting as triers of fact, are required by the Idaho Rules of Civil Procedure to prepare findings:

> In *all* actions tried upon the facts without a jury or with an advisory jury, the court *shall* find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; and in granting or refusing interlocutory injunctions the court *shall* similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action.

I.R.C.P. 52(a) (emphases added).

The need for findings cannot be limited to those situations where the magistrate intends to make a substantially equal division of community property, and I do not believe that was the intent of the cases cited by the majority. We recently summarized the proper procedure for magistrates to follow in distributing community property between the spouses:

Initially, the material assets of the parties must be identified. Then it must be determined what assets are separate property and what assets are community property. The separate property assets should be specifically noted and allocated to the proper spouse. The community property assets must be valued and distributed substantially equally unless the court finds compelling reasons otherwise. I.C. § 32–712. *See Donndelinger v. Donndelinger*, 107 Idaho 431, 690 P.2d 366 (Ct.App.1984).

*Cummings v. Cummings*, 115 Idaho 186, 191, 765 P.2d 697, 702 (Ct.App.1988).

There are also substantial policy reasons for trial courts to make findings of fact on all the material issues where the trial judge sits as the finder of fact:

> Our holding is not intended merely to facilitate appellate review, although that is a worthy consideration. Specific findings also demonstrate to the parties that the trial court has examined their divorce case—one of the most important emotional and economic events in their lives—with due care and attention to the evidence. Most importantly, the requirement of explicit findings encourages a trial judge to rely upon objectively supportable grounds for his decision, and discourages subjective or attitude-influenced perceptions of the case. Without that objective basis, trial court fact-finding is, as Judge Jerome Frank once observed, a "soft spot in the administration of justice." J. FRANK, COURTS ON TRIAL 74 (1950).

*Donndelinger*, 107 Idaho at 437, 690 P.2d at 372.

The cases discussed above indicate that the magistrate first must determine which material assets are community property. Then the magistrate must find the value of each material asset, if substantial and competent evidence of value has been presented to the court. Finally, the magistrate must distribute the community property

---

**4.** *See also Simplot v. Simplot*, 96 Idaho 239, 526 P.2d 844 (1974) (remanded for findings of fact as to the value of corporate stock owned by the community); *Josephson v. Josephson,* 115 Idaho 1142, 772 P.2d 1236 (Ct.App.1989) (remanded for findings of fact regarding the value of shares of common stock in a closely held corporation which were material assets of the community).

substantially equally, absent a finding of compelling reasons to do otherwise.