868 P.2d 501

**Lois CLARK, Plaintiff–Respondent,**

v.

**Gene CLARK, Defendant–Appellant.**

**No. 19738.**

Court of Appeals of Idaho.

Jan. 12, 1994.

Petition for Review Denied March 4, 1994.

Bruce H. Greene, Sandpoint, for appellant.

Hannon, Jenkins & Associates, Coeur d'Alene, for respondent. Terrance W. Hannon argued.

CAREY, Judge, Pro Tem.

This is an appeal from a decision of the district court which affirmed a property division entered as part of a divorce decree. The appeal questions the computations of the trial court and the characterization of one item of property. The decision is affirmed.

## PROCEDURAL BACKGROUND

Lois and Gene Clark were married in 1975. Two children were born during the marriage. The parties separated on November 1, 1985, and divorce proceedings thereafter commenced. Following a trial in 1987, the magistrate entered a decree granting a divorce, awarding child custody and visitation rights, setting child support, characterizing various property and debts as community or separate, and dividing the community estate.

The parties cross-appealed. After hearing the appeal, the district court remanded the case to the magistrate's division with instructions to characterize two eighty-acre parcels of land as community property. Both parcels had been awarded by the magistrate to Gene Clark as his separate property. The district court also ordered the magistrate to make additional findings concerning the community or separate nature of two land sale contracts (the "Turner" contract and the "Whetstone" contract).

Another hearing was held in 1990 following remand. The magistrate found the eighty-acre parcels to be community property, established their values as substantially equal, and awarded one parcel to each party. He found the Turner contract to be community property. He found that each of the Clarks and each of their children owned a one-fourth interest in the Whetstone contract. Finally, he retained jurisdiction to obtain an accounting of payments made under the Whetstone contract.

Gene Clark again appealed, claiming that the magistrate erred in computations associated with the two eighty-acre parcels. He also appealed the characterization of the Turner contract as community property. The district court affirmed the decision. Gene Clark now has appealed to this court, alleging the same errors. He does not question the district court's earlier decision that the two parcels of land were community property as a matter of law.

## STANDARD OF REVIEW

When presented with an appeal from an order of the district court reviewing a magistrate's decision, we examine the record independently of but with due regard for the district court's intermediate appellate opinion. Findings of fact by the magistrate must be upheld if they are supported by substantial and competent, though conflicting evidence. Application of the law to the facts, however, is subject to free review. *McNelis v. McNelis*, 119 Idaho 349, 806 P.2d 442 (1991); *Campbell v. Campbell*, 120 Idaho 394, 816 P.2d 350 (Ct.App.1991).

Part of the verbatim record of the trial proceedings before the magistrate has not been preserved, through no fault of either party. Neither side has cited this as a reason to summarily remand the case, and summary remand would present both sides with undue expense and further delay. To the extent that the record is sufficient to resolve appellate issues, we will address them on the merits. *Compare, Bernard v. Roby*, 112 Idaho 583, 733 P.2d 804 (Ct.App. 1987).

## VALUATION OF THE PARCELS OF LAND

Gene Clark first contends that the magistrate court erred in its computations when dividing the two eighty-acre parcels by failing to treat the parties as cotenants in

common and apportioning income and expenses attributable to the property on that basis.

The two parcels of land are located within a mile of each other. As noted above, the magistrate originally found that both parcels were Gene Clark's separate property. On remand, following the directions of the district court, the magistrate determined that the parcels actually were community property.

During the period between the original decree and the magistrate's decision following remand, Gene Clark had the exclusive possession and use of both parcels. He paid property taxes totalling $8,161, of which $4,080 was attributable to Parcel "B". He made repairs and renovations to the buildings on Parcel "A" at a cost of $5,248. There is no evidence of the increase in property value, if any, that resulted from the expenditures. He harvested timber from Parcel "A" and rented various buildings on Parcel "A", resulting in income to him in the amount of $8,450. Lois Clark received none of the income. In addition Gene Clark lived in one of the residences on Parcel "A" for part of the time. There was no evidence of the fair rental value of either parcel.

Parcel "A" is an eighty-acre tract of partly rocky land with poor commercial timber and improvements consisting of three small residences and some outbuildings. Parcel "B" is an eighty-acre tract with abundant commercial timber and no improvements. An expert witness valued Parcel "A" at $61,000 (including $21,000 for the improvements) and Parcel "B" at $63,000. Although the appraiser gave his opinion as of August 28, 1990, the day before the hearing on remand, he testified that property values in the area had been "holding steady" for the past three years. Balancing the benefits Gene Clark received from the property against some of the expenses he paid while he had its exclusive possession and use, and taking into consideration the preferences of the parties, the magistrate awarded Parcel "A" to Gene Clark and Parcel "B" to Lois Clark and concluded that the division was substantially equal.

Under Gene Clark's legal theory, he and his former wife were cotenants in common with respect to the property during the period of time between the magistrate's first and second decisions. Under this theory, the value of each parcel should be determined from the undisputed evidence of the appraisal. Rather than adjusting the appraised value for the benefits obtained and some of the expenses incurred, the court should have applied cotenancy law, requiring each party to share equally in the income and the expenses. Since expenses exceeded income by $4,958, and since the appraised value of Parcel "A" was $2,000 less than the value of Parcel "B", under this theory Gene Clark should be entitled to a net judgment of $3,479.

Most jurisdictions hold that if a final decree of divorce fails to dispose of community property, the former spouses own the omitted property equally as tenants in common. De FUNIAK, *Principles of Community Property* § 229 (2d Ed.1971); *see e.g., Matthews v. Houtchens,* 576 S.W.2d 880 (Tex.Civ. App.1979). *De Funiak,* however, points out that "... it is not strictly accurate to define this ownership after divorce by common-law terms, such as tenancy in common, ... It is rather a form of joint ownership, peculiar to the civil law community property system." § 229 at 521.

In this case, ownership of the disputed property should not be treated as a cotenancy in common. The judgment itself was not final, but was in the process of appeal. The property had been not omitted from the divorce decree but had been incorrectly characterized as Gene Clark's separate property. While it was so characterized, Lois Clark was not able to use or occupy any part of the property, contrary to the recognized attributes of tenancies in common. *See, Washington County Irrigation District v. Talboy,* 55 Idaho 382, 43 P.2d 943 (1935).

Furthermore, if ownership of the property were transmuted into a cotenancy in common because of the trial court's mistake, then the error-correcting function of the appellate process would be subverted. Nonapplication of the general rule was recognized in *Matthews v. Houtchens, supra,* when the Texas court intimated that the rule of cotenancy

might not be applied "... upon a re-entry into the same case as by proceedings in a bill of review case." 576 S.W.2d 880 (1979). In our view, under the facts of this case, the appropriate conclusion is that ownership of the property retained its true character throughout, and it did not temporarily take on the character of a tenancy in common pending completion of the appellate process.

Since the only error asserted in connection with the trial court's calculations was the failure to apply cotenancy principles, there is no basis for concluding that the trial court erred. We will not search the record for unspecified errors. *See, Kugler v. Drown,* 119 Idaho 687, 809 P.2d 1166 (Ct.App.1991).

## SEPARATE OR COMMUNITY NATURE OF TURNER CONTRACT

■ In his second specification of error, Gene Clark claims that the evidence did not support the magistrate's conclusion that the Turner contract was community property. He argues that the ultimate source of funds for the Turner contract was his separate property, through gifts from his mother, and that the Turner contract consequently is his separate property.

Prior to the marriage, Gene Clark had formed a partnership with his mother, Ruth Stockdale, for the purpose of running Green Haven Ranch, a property that had passed to her upon her husband's death in 1969. Some time later, a checking account was opened in the name of "Green Haven Ranch—Ruth Stockdale or Gene Clark or Lois Clark." The account was used by all three people, both for business transactions and for personal transactions. Throughout the marriage the Clarks relied on this account as an important source of funds, because Gene Clark earned insufficient money from seasonal employment as a logger, farmer, and equipment operator to support the family.

In December 1977, an eight-acre piece of property owned by James and Mildred Merritt was purchased in the name of Gene and Lois Clark, husband and wife, for a price of $56,000. $15,000 was payable at closing, $10,000 was payable on December 1, 1978, and the balance was payable at $5,000 per year. The $15,000 down-payment was made by two checks drawn on the Green Haven Ranch account by Gene Clark. The payment due in December 1978 also was made by a check drawn on the account by Gene Clark. According to Ruth Stockdale, the money to cover the checks was placed in the account by her as a gift to her son. Thereafter, the annual $5,000 payments were made from sales of timber on Stockdale's property. It is not clear from the record who did the actual logging.

In December 1981, the property was sold to Louise Turner for $80,000. The contract called for payments of approximately $9,200 per year, payable to Gene Clark and Lois Clark, husband and wife. Turner granted a mortgage on the property to Gene Clark and Lois Clark, husband and wife, to secure payment of the contract price. After the sale, payments to the Merritts were made out of the payments received from Turner. The Merritt obligation had been fully satisfied by the time of the second hearing in 1990.

After considering all the evidence, the magistrate rejected Stockdale's testimony about her subjective intent in placing money in the checking account for the initial payments for the property. The magistrate concluded that all the other circumstances contradicted her testimony, and that the transfer of funds was intended to be a gift to the marital community and not to Gene Clark individually.

Gene Clark argues that Stockdale's testimony was unrefuted and must be accepted at face value. *Airstream, Inc. v. CIT Financial Services, Inc.,* 111 Idaho 307, 723 P.2d 851 (1986). In *Airstream,* the Supreme Court said:

> Our prior cases have held that courts must accept as true the positive uncontradicted testimony of credible witnesses, unless inherently improbable or rendered so by facts and circumstances disclosed at the trial.

111 Idaho at 312, 723 P.2d at 856.

It is patent that a witness's testimony about his or her subjective intent is difficult to contradict except inferentially from attending circumstances. In this case the cir-

cumstances of the transactions and Stockdale's obvious hostility to her former daughter-in-law tend to render her testimony inherently improbable. As the magistrate commented:

> Parents commonly bestow gifts of money and property on their adult married children. Generally [these] transactions are made at a time when there is family harmony. Usually parents do not wish that their children suffer a divorce, but rather expect and hope that their offspring, in laws, and grandchildren will remain united. When a divorce occurs it is not unexpected that parents will side with their own flesh and blood and take the position that their prior gifts should pass solely to their children and not be divided among the divorcing couple. That is why the court must look to the entire circumstances and facts of a case and not rely solely upon the donor's stated intent.

We have reviewed the record and conclude that the circumstances shown by the evidence support the magistrate's conclusion that Stockdale's testimony about her subjective intent was not accurate. There is substantial and competent, albeit conflicting, evidence in the record to support the conclusion that the source of the funds that eventually resulted in the Turner contract were gifts from Stockdale to the marital community and not gifts to her son alone. The magistrate's ultimate conclusion that the contract was community property should not be reversed.

## CONCLUSION

The judgment of the trial court is affirmed. Costs but not attorney fees will be awarded to Lois Clark and against Gene Clark pursuant to I.A.R. 40.

WALTERS, C.J., and SWANSTROM, J., pro tem., concur.