**In re Nichole R. HERTER, Debtor.**

**R. Sam Hopkins, Trustee, Plaintiff,**

**v.**

**Idaho State University Credit Union; Nichole Renae Herter; and David Herter, Defendants.**

Bankruptcy No. 08–41160–JDP.
Adversary No. 10–8093–JDP.

United States Bankruptcy Court,
D. Idaho.

June 21, 2011.

Decision Denying Reconsideration
Sept. 2, 2011.

---

Daniel C. Green, Brett Cahoon, Racine, Olson, Nye, Budge & Bailey, Chartered, Pocatello, ID, for Plaintiff.

Judy L. Geier, Jed Manwaring, Evans Keane, LLP, Boise, ID, for Defendants Idaho State University Credit Union and David Herter.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Bankruptcy Judge.

### Introduction

Resolution of the issues in this action requires the Court to decide whether an interest in an Idaho residence, which passed unadministered through a husband's chapter 7 [1] bankruptcy case, may be administered as property of the bankruptcy estate in his wife's subsequent chapter 7 case. If the house is indeed property of the second bankruptcy estate, and if the trustee is the same for both bankruptcy cases, the Court must consider whether the trustee's actions in relation to the property in either case limits his ability to avoid a post-petition transfer of an interest in the property in the second bankruptcy case.

### Facts

David and Nichole Herter, as husband and wife, purchased a home in Pocatello ("the Property") in 2002. *See* Dkt. No. 15–2, Ex. B.[2] At the time, they executed a deed of trust on the Property in favor of the predecessor in interest to Midland

---

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

2. Unless otherwise indicated, all cited documents refer to the adversary proceeding docket, Adv. No. 10–8093.

Mortgage Co. ("Midland") to secure a loan of $74,760. *Id.* In 2006, David and Nichole [3] executed a second deed of trust against the Property in favor of another creditor, Defendant Idaho State University Federal Credit Union ("ISUFCU"), to secure a revolving credit line of $27,500. Dkt. No. 15–3, Ex. C.

On October 28, 2008, in anticipation of divorce, David and Nichole executed a self-drafted stipulated divorce decree. Dkt. No. 26, Ex. A. In it, among other terms, David and Nichole agreed that they "have a community interest in" the Property, and that the Property "shall be sold and the net proceeds divided 50% to [Nichole] and 50% to [David]." *Id.*

Having agreed to the terms of a proposed divorce decree, David and Nichole then separately filed for chapter 7 bankruptcy relief. The relevant facts of each bankruptcy case are discussed in more detail below. However, some of the fundamental facts are appropriately set forth here.

First, David filed his bankruptcy petition on November 7, 2008, while Nichole filed hers on November 19, 2008. Bankr. No. 08–41117, Dkt. No. 1; Bankr.No. 08–41160, Dkt. No. 1. Second, while David and Nichole agreed pre-bankruptcy, as between themselves, to the terms to be incorporated in their divorce decree, the state court, for reasons unknown to the Court, did not enter the decree until November 26, 2008, after the bankruptcy filings. Dkt. No. 26–1, Ex. A. And finally, while David's bankruptcy case was closed on February 12, 2009, Bankr.No. 08–41117, Dkt. No. 28, Nichole's case remains open.

**I. David's bankruptcy case.**

As noted above, on November 7, 2008, David filed a chapter 7 petition. Bankr. No. 08–41117, Dkt. No. 1. Plaintiff R. Sam Hopkins ("Trustee") was appointed to serve as the chapter 7 trustee.

David listed the Property on his Schedule A, and claimed an Idaho homestead exemption in the Property on Schedule C. *Id.* David's Schedule D indicated two creditors held debts secured by the Property: Midland, with a claim of $61,377.70; and ISUFCU, with a claim of $27,027.21. *Id.*

There is some indication in the record that David believed his and Nichole's signing of the stipulated divorce decree had legal consequences. His bankruptcy schedules characterize Nichole as his "Ex-wife" and his marital status as "single." *Id.* He left the Schedule A column for characterizing the Property as separate, joint, or community property blank.[4] *Id.* In addition, David's Schedule B list of personal property includes a "domestic support obligation from Nicole (sic) Herter for [their daughter]" for $240 per month, which he claims as exempt on Schedule C. *Id.* That domestic support obligation is also a product of the couple's stipulated divorce decree. *See* Dkt. No. 26–1, Ex. A.

On January 12, 2009, David's counsel, Trustee, and ISUFCU stipulated to entry of an order for relief from the automatic stay as to the Property for ISUFCU. Bankr.No. 08–41117, Dkt. No. 21. The Court entered the order on February 8, 2009. *Id.*, Dkt. No. 22.

---

**3.** References to Debtors' first names is solely for the clarity of this decision; no disrespect is intended.

**4.** The schedule A instructions read: *"If the debtor is married,* state whether the husband, wife, both, or the marital community own the property...."* (emphasis added). If, when completing his petition, David believed he was no longer married, he may also have assumed there was no duty to characterize his Schedule A property.

On January 22, 2009, Midland also moved for automatic stay relief for the Property. *Id.*, Dkt. No. 18. When no party objected to Midland's motion, the Court ordered relief on February 12, 2009. *Id.*, Dkt. Nos. 26, 27.

Also on February 12, 2009, the Court entered an order granting David a bankruptcy discharge, *id.*, Dkt. No. 25, and an order discharging Trustee from his duties and closing David's bankruptcy case, *id.*, Dkt. No. 28.

## II. Nichole's bankruptcy case.

Nichole filed her chapter 7 bankruptcy petition on November 19, 2008. Bankr.No. 08–41160, Dkt. No. 1. Mr. Hopkins was also appointed trustee in that case.

Nichole listed the Property on her Schedule A, and, like David, did not characterize the Property as separate, joint, or community. *Id.* She did not claim an exemption in the Property. *See id.*

Nichole indicated Midland and ISUFCU were both owed debts secured by an interest in the Property. *Id.* In her Statement of Intention, Nichole indicated it was her intent to surrender the Property to Midland. *Id.*[5]

Whereas David's petition indicates he may have believed the couple's divorce decree was legally effective when they signed it, Nichole's petition, schedules, and statements certainly do not convey that impression. Instead, Nichole's petition characterizes David as her "nondebtor spouse," her marital status as "married," and her divorce as "pending." *Id.* She filed a Statement of Domestic Support Obligations the same day that she filed her petition, though she indicated the obligation, $240 per month to David, would not start until "11/2008." *Id.*, Dkt. No. 8.

Trustee and ISUFCU signed a stay relief stipulation as to the Property on January 12, 2009. *Id.*, Dkt. No. 21. Nichole's counsel signed the stipulation January 20, 2009, *id.*, and the Court ordered relief on February 9, 2009, *id.*, Dkt. No. 22.

Nichole was granted a discharge on March 5, 2009. *Id.*, Dkt. No. 27.

On May 22, 2009, Midland filed a motion for stay relief as to the Property. *Id.*, Dkt. No. 40. No one objected to Midland's motion, and the Court ordered relief on June 15, 2009. *Id.*, Dkt. Nos. 43, 44.

On June 25, 2009, Midland recorded a Notice of Default for the Property under its deed of trust. Dkt. No. 15–10, Ex. J. A Notice of Trustee's Sale was mailed to Debtors on June 30, 2009, indicating a trustee's sale of the Property scheduled for November 3, 2009. Dkt. No. 15–11, Ex. K.

On August 31, 2009, Nichole executed, and apparently delivered, a quit-claim deed conveying her interest in the Property to David. Dkt. No. 15–12, Ex. L. David then closed a loan from ISUFCU for $102,000 to refinance the Property in exchange for a new deed of trust, which was recorded September 1, 2009. Dkt. No. 15–13, Ex. M. The loans of both Midland and ISUFCU were presumably satisfied by the new loan's proceeds, and the deeds of trust securing those loans were released. Dkt. No. 14. The "new" deed of trust securing the refinance loan to ISUFCU is the only remaining lien on the Property. *Id.*

## III. This adversary proceeding.

In his status as trustee in Nichole's bankruptcy case, Trustee commenced this adversary proceeding against David and ISUFCU on October 14, 2010. Dkt. No. 1. In his complaint, Trustee seeks to avoid and recover the transfer effected by the

---

**5.** It is undisputed that the Property was never surrendered.

deed from Nichole to David, and the deed of trust from David to ISUFCU, as post-petition transfers under §§ 549(a) and 550. *Id.* David and ISUFCU filed a joint answer denying Trustee's right to such relief; they also filed a counterclaim alleging Trustee's attempts to avoid the transfers constitute a breach of the parties' stay relief stipulation, and seeking attorneys' fees and costs. Dkt. No. 6.

On April 5, 2011, David and ISUFCU filed a motion for summary judgment, a brief, a statement of undisputed facts, and affidavits, in which they argue that (1) the Property was not part of Nichole's bankruptcy estate when the targeted transfers were made; (2) Trustee should be estopped from avoiding the transfers due to his actions regarding the Property in both David and Nichole's bankruptcy cases; and (3) even if Nichole's bankruptcy estate initially had an interest in the Property, Trustee forfeited that interest when he did not object to her stated intent to surrender the Property to Midland. Dkt. Nos. 12–17.

Trustee filed a response opposing the summary judgment motion, a statement of disputed and undisputed facts, and opposing affidavits on April 25, 2011. Dkt. Nos. 21–26.

David and ISUFCU filed a reply on May 2, 2011. Dkt. No. 27.

A hearing on the summary judgment motion was held May 10, 2011. Supplemental briefs were submitted by David and ISUFCU on May 24, 2011, Dkt. No. 31, and by Trustee on June 7, 2011, Dkt. 32. The issues having been fully argued, and having considered the record, the parties' submissions, and applicable law, this Memorandum disposes of the motion. Rules 7052, 9014.

## Discussion

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 7056 (incorporating Fed.R.Civ.P. 56(a)). Here, the parties agree that, while there may be some disputed facts peripheral to the current motion for summary judgment,[6] there is no genuine issue as to any material fact. Therefore, David and ISUFCU may be awarded summary judgment, if it can be shown they are entitled to judgment as a matter of law. The Court now examines each of David's and ISUFCU's theories to make that determination.

### I. Nichole's bankruptcy estate included an interest in the Property.

#### A. *David and Nichole's execution of the stipulated divorce decree did not transmute their community interests in the Property.*

David and ISUFCU argue that, as community property, the Property was part of David's bankruptcy estate. In contrast, Trustee asserts David and Nichole's October 28, 2008, stipulated divorce decree was legally sufficient to separate their interests in the Property, such that Nichole's "new" separate property interest in the Property did not become property of David's bankruptcy estate.

 The filing of a bankruptcy petition creates a bankruptcy estate that includes not only all of a debtor's legal or equitable interests in property, but also all community property interests of both the debtor and the debtor's spouse over which the debtor has control as of the case's

---

6. For instance, the parties have not agreed on the Property's value.

commencement. § 541(a)(1), (a)(2).[7] A bankruptcy estate, however, does not include a non-debtor spouse's separate property. *See In re Bauer*, 05.3 I.B.C.R. 60, 61 (Bankr.D.Idaho 2005). To determine whether property is community property, and is thereby integrated into a bankruptcy estate, the Court looks to state law. *Id.*

■ Idaho is a community property state. *See* Idaho Code §§ 32–901 to 32–929. Underlying Idaho's community property scheme is a presumption that all property acquired during marriage is community property. *Winn v. Winn*, 105 Idaho 811, 673 P.2d 411, 413 (1983) (citing *Stanger v. Stanger*, 98 Idaho 725, 571 P.2d 1126 (1977)). To rebut that presumption, a party must prove property's separate character with reasonable certainty and particularity. *See id.; Freeburn v. Freeburn (In re Estate of Freeburn)*, 97 Idaho 845, 555 P.2d 385, 389 (1976).

■ Whether property is community or separate is determined when it is acquired. *Kraly v. Kraly*, 147 Idaho 299, 208 P.3d 281, 285 (2009) (citing *Winn*, 673 P.2d at 415). Despite that initial determination, Idaho spouses may transmute property's character from separate to community, or vice versa. *See Wolford v. Wolford*, 117 Idaho 61, 785 P.2d 625, 630 (1990) (quoting *Stockdale v. Stockdale*, 102 Idaho 870, 643 P.2d 82, 85 (1982)). The primary method of doing so is via a marriage settlement agreement. Idaho Code § 32–916; *see Suchan v. Suchan*, 106 Idaho 654, 682 P.2d 607, 613 (1984).

■■ An effective marriage settlement agreement must contain an "actual, articulated intent" that the property in question be changed from one character to another. *See Winn*, 673 P.2d at 414. In addition, it must meet certain statutory requirements. Idaho Code §§ 32–917; 32–918. Marriage settlement contracts must be written, executed and acknowledged, or proved in the same manner as land conveyances. Idaho Code § 32–917. The agreement must then be recorded in every county recorder's office where real estate affected by the settlement is located. Idaho Code § 32–918.

■ Trustee, as the party asserting a transmutation, has not shown the Property was no longer community property when David filed his bankruptcy petition. The parties have submitted a portion of a stipulated divorce decree that was, presumably, signed by the parties before being entered by the state court. In the homemade, boilerplate provisions of this decree, David and Nichole agree the Property "shall be sold and the net proceeds divided 50% to the Wife and 50% to the Husband." Viewed as the spouses' agreement, while the language of the proposed decree certainly evinces their actual, articulated intent that the Property be sold and the proceeds divided, and while there is some evidence that David may have believed the decree to be effective when signed, it is not at all clear that both David and Nichole intended any division of ownership as to

---

7. Section 541(a)(2) provides:
The commencement of a case ... creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

\* \* \* \*

(2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—

(A) under the sole, equal, or joint management and control of the debtor; or
(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

the Property to occur on October 28, 2008, when the decree was signed by the parties. This is buttressed by the fact that David later solicited and obtained a quit-claim deed from Nichole transferring the Property to him. In addition, the copy of the stipulated divorce decree presented to the Court is not signed, executed, or acknowledged,[8] and there was nothing submitted to the Court to show it was ever recorded in the real property records of Bannock County.

In other words, the Court has not been shown that David and Nichole's execution of the stipulated divorce decree transmuted their community interests in the Property into separate interests prior to David filing for bankruptcy.

**B. An interest in the Property passed into Nichole's bankruptcy estate after David's bankruptcy case closed.**

Recall, the divorce decree was not entered by the state court until after David filed his bankruptcy petition. Assuming Nichole's interest in the Property was not her separate property on his filing date, the question is: what interests in the Property, if any, passed into David's, and then, later, into Nichole's bankruptcy estate?

**1. David's bankruptcy estate.**

**a. David's bankruptcy estate included the spouses' community interests in the Property throughout his bankruptcy case.**

Even if spouses are in the process of divorce when one of them files for bankruptcy, as long as the divorce has not been finalized and property has not yet been divided by the state court's decree, all

community property becomes part of the bankruptcy estate of the debtor-spouse. § 541(a)(2); see Dumas v. Mantle (In re Mantle), 153 F.3d 1082,1085 (9th Cir.1998); In re Kido, 142 B.R. 924, 925–26 (Bankr.D.Idaho 1992) ("[W]here one party to the community files a petition for relief, the provisions of 11 U.S.C. § 541(a)(2) cause the community property interests of both parties, or, the entire community, to become property of the estate, at least, in Idaho where the community property is under the control and management of both parties."). Including community property in one spouse's chapter 7 bankruptcy estate allows creditors with separate claims against the filing spouse, as well as creditors with community claims against either the filing or non-filing spouse, to participate in distributions and otherwise in the debtor's bankruptcy. See H.R. REP. NO. 95–595, at 366 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6322 ("[Section 541(a) ] also codifies the split discharge for debtors in community property states. If community property was in the estate and community claims were discharged, the discharge is effective against community creditors of the nondebtor as well as of the debtor spouse.").

In Idaho, all property acquired by either a husband or wife after marriage is community property. Idaho Code § 32–906. Both husband and wife have the equal right to manage and control such property. Idaho Code § 32–912. Thus, when David filed for bankruptcy, his bankruptcy estate included both his and Nichole's community interests in the Property.

Not all property included in a bankruptcy estate, however, remains in the estate.

*Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi)*, 432 B.R. 812, 820 (9th Cir. BAP 2010). The Bankruptcy Code allows debtors to exempt certain property, and, thereby, attempt to reclaim an interest in the property and protect it from the reach of the trustee for satisfaction of creditors' claims. *Schwab v. Reilly*, — U.S. —, 130 S.Ct. 2652, 2663–64, 177 L.Ed.2d 234 (2010). To do so, a debtor must file a list of property claimed as exempt, and, unless an interested party objects to that claim, "the property claimed as exempt on that list is exempt." § 522(*l*); *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643–44, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). The Code's exemption statutes, found in § 522, provide a federal exemption scheme while also allowing states to "opt out" of the federal scheme, and, instead, limit a debtor's exemptions to those authorized by state law. § 522(b)(1). Idaho has opted out. Idaho Code § 11–609.

Idaho's statutes limit a debtor's homestead exemption to no more than $100,000 of a homestead's value. Idaho Code § 55–1003. That protection extends to the entire homestead, and a married debtor may protect "the community or jointly owned property of the spouses or the separate property of either spouse . . . ." Idaho Code § 55–1002. While other Idaho statutes limit a debtor's exemption to his undivided interest in property,[9] the homestead exemption statute specifically provides that a debtor may exempt an interest in community property.[10] *Id.; Fitzgerald v. Clarke (In re Taylor–Clarke)*, 99.4 I.B.C.R. 164,-165 (Bankr.D.Idaho 1999) ("[Idaho Code § 55–1002] does not limit the homestead exemption to merely the debtor's undivided interest in community property. To the contrary, the homestead exemption goes so far as to allow a debtor to exempt even the separate property of a spouse, so long as that property is used as a homestead.").

■ Even where exemptions are properly claimed, however, if the exemption is in an asset's value, the exemption does not remove the asset from a bankruptcy estate; it merely guarantees the debtor payment in the exemption's dollar amount. *Schwab*, 130 S.Ct. at 2667. Such is the case with Idaho's homestead exemption. *See* Idaho Code § 55–1003. David claimed an exemption in his and Nichole's community property homestead, thereby protecting up to $100,000 in the homestead's value from the potential reach of creditors. While, when no one objected to his claim, David's homestead exemption was deemed allowed, this exemption did not remove the Property from his bankruptcy estate.

**b. *David and Nichole's divorce decree became effective, and separated their interests in the Property, at the closing of David's bankruptcy case.***

■ Not only is a bankruptcy estate created with the filing of a bankruptcy petition, but an automatic stay also arises to protect the debtor and property of the estate against certain, specified acts, including acts by others to exercise control over property of the estate. § 362(a)(3). Because it applies against "all entities," the automatic stay even prevents most

---

**9.** Many Idaho exemptions provide that an "*individual* debtor" may exempt property up to a certain value. *See, e.g.,* Idaho Code § 11–605(1)–(3), (8), (10), (11) (emphasis added). In such cases, a debtor may not claim a non-filing spouse's community interest in the subject property as exempt. *In re DeHaan*, 275 B.R. 375, 381–82 (Bankr.D.Idaho 2002).

**10.** Of course, if exempt property is sold, while up to $100,000 in value is exemptable, each spouse is only entitled to one-half of any exempted equity in community property.

state court actions. *Id.; Sternberg v. Johnston*, 595 F.3d 937, 944 (9th Cir.2010). In the divorce context, however, a bankruptcy filing by one spouse does not prevent a state court from dissolving a marriage due to the automatic stay. § 362(b)(2)(A)(iv).[11] At the same time, however, the stay does prevent a state court from dividing divorcing parties' property. *Id.*

■■■ The automatic stay continues to shield property as long as that property is part of the bankruptcy estate. § 362(c)(1); *In re Jackson*, 403 B.R. 95, 98 (Bankr.D.Idaho 2009). Actions taken in violation of the automatic stay are void. *Griffin v. Wardrobe (In re Wardrobe)*, 559 F.3d 932, 934 (9th Cir.2009) (quoting *Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1082 (9th Cir. 2000)) ("[A]ctions, including judicial proceedings, 'taken in violation of the automatic stay are void.'"); *Hopkins v. SunTrust Mortg., Inc. (In re Ellis)*, 441 B.R. 656, 662 (Bankr.D.Idaho 2010) (citing *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir. 1992)).

Property remains in a bankruptcy estate until it is administered (*i.e.*, sold or transferred to another), abandoned, or the bankruptcy case is dismissed, at which time it reverts to the parties as if no petition had been filed. § 349(3); *see also, Dewsnup v. Timm*, 908 F.2d 588, 590 (10th Cir.1990), *aff'd, on other grounds*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992); *In re Taylor–Clarke*, 99.4 I.B.C.R. at 165 (quoting *Heintz v. Carey (In re Heintz)*, 198 B.R. 581, 585 (9th Cir. BAP 1996)).

Abandonment occurs, among other ways, if a scheduled asset is not administered by the case trustee at the time a bankruptcy case is closed. § 554(c).

■■■ Here, the state court entered David and Nichole's divorce decree on November 26, 2008, a few days after they filed their bankruptcy petitions. At that time, David and Nichole's marriage was dissolved but, since the Property had become part of David's bankruptcy estate, the automatic stay prevented the divorce decree from dividing the parties' community property. As a result, any provisions of the state court decree purporting to divide the couple's interests in community property were void and ineffective.

However, when David's bankruptcy case was closed on February 12, 2009, the Property had not been administered, and, as a result, it was deemed abandoned at that time, no longer protected by the automatic stay. The Property was again subject to the divorce court's power to divide the spouses' community property. In short, it was not until the closing of David's bankruptcy estate that David and Nichole's community interests in the Property could effectively be transmuted to separate interests.

■■■ Yet, when fairly construed, the divorce decree in this case did not completely dispose of the parties' community interests in the Property. Recall, it provides: "[The Property] shall be sold and the net proceeds divided 50% to the Wife and 50% to the Husband." Missing from the decree is any indication of who owns the Property between the effective date of

---

11. Section 362(b)(2)(A)(iv) provides:
 The filing of a petition ... does not operate as a stay—
 (2) under subsection (a)—
 (A) of the commencement or continuation of a civil action or proceeding—

\* \* \* \*
 (iv) for the dissolution of a marriage, except to the extent that such proceeding seeks to determine the division of property that is property of the estate.

the divorce and when it is sold. Under Idaho law, where a divorce decree does not dispose of community property, former spouses own the property as tenants in common. *See Quinlan v. Pearson,* 71 Idaho 26, 225 P.2d 455, 456 (1950); *Clark v. Clark,* 125 Idaho 173, 868 P.2d 501, 503 (1994); *Carr v. Carr,* 116 Idaho 747, 779 P.2d 422, 428 (1989). Therefore, as of February 12, 2009, the date of the closing of David's bankruptcy estate, David and Nichole effectively each owned an undivided one-half interest in the Property as tenants in common.

### 2. *Nichole's bankruptcy estate.*

██ Nichole filed her bankruptcy petition twelve days after David filed his. Generally, a debtor's bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1). However, where two spouses file asynchronous bankruptcy petitions in a community property state, the couple's community property interests pass to the first-spouse-to-file's bankruptcy estate; all that enters the second-spouse-to-file's bankruptcy estate are her separate property interests. § 541(a)(2); *In re Bauer,* 05.3 I.B.C.R. at 61–62; *In re Pixler,* 02.2 I.B.C.R. 87, 88 (Bankr.D.Idaho 2002).

██ As a general rule, the date a bankruptcy petition is filed serves to delineate whether property is, or is not, part of a debtor's bankruptcy estate. *See* § 541(a)(1). Under § 541(a)(5), however, certain types of property interests ac-

quired within 180 days *after* the filing of a bankruptcy petition also become property of a debtor's estate. Among those after-acquired interests are any that a debtor acquires "as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree." § 541(a)(5)(B).[12]

██ David and Nichole's divorce decree effectively divided their property, but not until David's bankruptcy case closed on February 12, 2009. Of course, that was within 180–days of the date Nichole filed her November 19, 2008, bankruptcy petition. Consequently, since under the divorce decree Nichole held a one-half interest in the Property as a tenant in common, that interest immediately passed into her bankruptcy estate on February 12, 2009, per § 541(a)(5)(B).

Closing the circle, then, David and ISUFCU are not entitled to summary judgment. Their argument that the Property never became part of Nichole's bankruptcy estate is incorrect. The Property was property of Nichole's bankruptcy estate on and after February 12, 2009; including on August 31, 2009, when Nichole purported to transfer her interest to David, and on September 1, 2009, when David purported to convey a lien on the Property to ISUFCU. Because these transfers included an interest in property of Nichole's bankruptcy estate, if all other required elements are shown to exist, the transfers may be vulnerable to avoidance by Trustee under § 549(a).

---

12. In full, § 541(a)(5)(B) provides:
 (a) The commencement of a case … creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
 * * * *
 (5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor

on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—
* * * *
(B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree.

## II. The doctrine of equitable estoppel does not prevent Trustee from avoiding Nichole's transfer of her interest in the Property to David.

David and ISUFCU argue that, under the doctrine of equitable estoppel, Trustee may not pursue avoidance of the Property transfers. The Court disagrees.

 First, it is important to understand who may assert equitable estoppel in the context of this bankruptcy case. Estoppel is a defense that may be raised only by a party who relied upon the actions of another to his detriment. *See United States v. Howell (In re Howell)*, 120 B.R. 137, 140 (9th Cir. BAP 1990) (identifying the elements to prove estoppel). Under these facts, David and ISUFCU may not assert estoppel against Trustee to bar his action to avoid a transfer by Nichole. Put another way, since it was Nichole that allegedly relied on Trustee's actions in making the transfer of an interest in the Property by quit-claim deed to David, David and ISUFCU cannot estop Trustee from seeking to undo that transfer.

Similarly, ISUFCU may not assert estoppel against Trustee to bar his avoidance action against David in making the transfer to ISUFCU. Again, the equitable estoppel defense, if proper at all, must be analyzed as between Trustee and the respective transferor, in this instance, David.

 David maintains Trustee should be equitably estopped from pursuing a § 549 avoidance action targeting his grant of a security interest to ISUFCU. In deciding to transfer an interest in Nichole's bankruptcy estate property, David asserts he relied on Trustee's response to various motions and statements affecting the Property in Nichole's bankruptcy case, and on Trustee's inaction in allowing David to claim an exemption in the Property's value and to otherwise allow the Property to pass through his own bankruptcy case without administering it. Defendants' Summary Judgment Memorandum at 4–7, Dkt. No. 13. Upon close examination of the record, though, David's reliance on estoppel as a defense to Trustee's action is misplaced because the doctrine of equitable estoppel exists to "prevent[ ] a party from assuming inconsistent positions to the detriment of another party." *United States v. Georgia–Pacific Co.*, 421 F.2d 92, 95–96 (9th Cir.1970). Under these facts, Trustee has not taken a position inconsistent with his role as a chapter 7 case trustee.

### A. Trustee's actions in David's bankruptcy case do not warrant estopping him from acting in Nichole's bankruptcy case.

 David asserts Trustee should be estopped from administering Nichole's interest in the Property in her bankruptcy case because Trustee did not administer the Property in David's case, resulting in the Property's abandonment in his case.

A chapter 7 trustee's charge is to maximize recovery for creditors by maximizing the bankruptcy estate's assets. *United States v. Sims (In re Feiler)*, 218 F.3d 948, 952 (9th Cir.2000). Inherent in doing so, a trustee must consider a property's value to determine the appropriate action respecting that property. If there is no equity in an estate asset, there is little motivation for a chapter 7 trustee to incur the expense of administering the asset. See § 554(a) (identifying one of the justifications for a trustee's abandonment of property as a lack of value to the estate).

In David's bankruptcy case, there was no equity in the Property for Trustee to liquidate for creditors. At the time, the Property was encumbered by two liens, and David claimed an exemption in $100,000 of the homestead's value beyond

those liens. Trustee's decision to not incur costs in administering the Property, which likely would have yielded nothing for David's bankruptcy estate had Trustee pursued liquidation, was, therefore, consistent with his role and duties as a chapter 7 trustee.

Trustee's actions and approach to the Property in Nichole's case are similarly consistent with his chapter 7 trustee role and duties. Nichole's bankruptcy case remains active and open, and, as things now stand, only one lien encumbers the Property, a lien that, along with a transfer of Nichole's interest in the Property to David, may potentially be avoidable by Trustee pursuant to § 549(a). If Trustee avoids that lien, there may now be equity in the Property available to Nichole's bankruptcy estate. Seen in this fashion, Trustee's pursuit of that equity is not inconsistent with his decision to not liquidate the Property in David's case, when there was no potential equity to David's bankruptcy estate.

Trustee has not acted inconsistently in Nichole's case from his approach to his chapter 7 duties in David's case. In both cases, he evaluated the potential value in the Property to the pertinent bankruptcy estate under the facts, and acted accordingly.

**B.** *Trustee's actions in Nichole's bankruptcy case do not warrant estopping him from acting to avoid David's transfer to ISUF-CU.*

■ David asserts Trustee should be estopped from pursuing his § 549(a) action in Nichole's case because he previously decided not to object to relief from the automatic stay as to Midland, and, indeed, stipulated to such relief as to ISUFCU, in that case.

■ The value of property within a bankruptcy estate, and, therefore, the property's value to the estate, may change over the course of a bankruptcy case. *See Gebhart v. Gaughan (In re Gebhart)*, 621 F.3d 1206, 1211–12 (9th Cir.2010). A trustee's motivation to administer an interest in property (or not) may also change as a bankruptcy case progresses, particularly if there is an increase in equity available to the bankruptcy estate. *See id.; Hyman v. Plotkin (In re Hyman)*, 123 B.R. 342, 348 (9th Cir. BAP 1991) (explaining that, where there is no equity in an asset, there is no reason for a trustee to object to actions affecting the asset; and, when that is the case, a trustee's failure to speak is not misleading and does not estop the trustee from later objecting if the asset's value changes). As long as a trustee has not affirmatively abandoned an interest in property of the estate in a particular case, he has not evinced an intent to relinquish the bankruptcy estate's interest in the property. *In re Hyman*, 123 B.R. at 348 (quoting *Bateman v. Grover (In re Berg)*, 45 B.R. 899, 903 (9th Cir. BAP 1984) ("Abandonment requires affirmative action or some other evidence of intent by the trustee.")). Not responding to a motion for relief from the automatic stay, or even stipulating to such relief, is not conclusive evidence of a trustee's intent to abandon a bankruptcy estate's interest in property. *Catalano v. Comm'r of Internal Revenue*, 279 F.3d 682, 686–87 (9th Cir.2002) (indicating that relief from the automatic stay only modifies the injunction prohibiting actions against the debtor or the debtor's property, and "does not mean that the estate's interest in the property is extinguished.").

Contrary to the argument of David and ISUFCU, on these facts, it is clear that Trustee did not intend to abandon the bankruptcy estate's interest in the Property during Nichole's bankruptcy case.

While he consented to stay relief in favor of several of Nichole's creditors, Trustee's decision to do so was based on an equity analysis at the time each motion for relief was made. At such times, the Property was subject to two nonavoidable trust deeds. However, while the Property remained property of Nichole's bankruptcy estate, those deeds of trust were released. Trustee's actions, or inaction, during the pendency of Nichole's bankruptcy case can not prevent him from now pursuing an equity in the Property that only became available through Nichole's and David's apparently unauthorized postpetition transfers.[13] Indeed, in prosecuting this action, Trustee is fulfilling his statutory duty as a chapter 7 case trustee to maximize recovery for unsecured creditors; he should not be estopped from doing so.

■ In addition to the legal justifications for not estopping Trustee from performing his duties as a chapter 7 case trustee in this case, there are strong policy reasons against doing so. A "prime bankruptcy policy" is to achieve equality of distribution among creditors of a debtor. H.R. REP. NO. 95–595, at 177–78 (1977). The chapter 7 trustee system helps sustain that policy by preventing a race to obtain and liquidate assets by individual creditors, and by providing representation to creditors who might not otherwise be able to afford to participate in the distribution process. *See id.; Heath v. Am. Express Travel Related Servs. Co., Inc. (In re Heath),* 331 B.R. 424, 429 (9th Cir. BAP

2005). Allowing an individual creditor, or a subset of creditors, to prevent a trustee from fulfilling his statutory duties to the bankruptcy estate based upon his personal conduct would frustrate one of the Bankruptcy Code's primary tools to ensure the protection of *all* creditors' rights, and should not be supported by the Court absent compelling circumstances. *See also Hirschfeld v. McKinley,* 78 F.2d 124, 135 (9th Cir.1935) (explaining that a chapter 7 trustee represents the interests of all unsecured creditors, and not any particular individual creditor or group of creditors).

Summary judgment for David and ISUFCU is not appropriate based on any theory that Trustee be equitably estopped.

### III. Trustee did not forfeit Nichole's bankruptcy estate's interest in the Property by not ensuring Nichole performed her stated intention in regards to the Property.

■ Finally, David and ISUFCU assert that Trustee forfeited any interest in the Property for Nichole's bankruptcy estate when he did not ensure Nichole performed her Statement of Intention as to the Property. David and ISUFCU's argument rests on §§ 521(a)(2) and 704(a)(3).

Section 521(a)(2) identifies duties of an individual debtor if that debtor's schedule of assets and liabilities includes debts secured by property of the estate.[14] Not

---

**13.** Of course, David and ISUFCU did not need to "guess" about whether Trustee intended to administer, or to abandon, the Property. Any uncertainties about Trustee's goals could have been quickly dispelled if they, or Nichole, had simply filed a motion to deem the Property abandoned from Nichole's bankruptcy estate, thereby effectively removing it from Trustee's reach before the postpetition transfers occurred. *See* § 554(b). That they did not resort to this ready remedy

weighs heavily against David's and ISUFCU's claim of inequity.

**14.** Section 521(a)(2) provides:
> (a) The debtor shall—
> * * * *
> (2) if an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate—
> (A) within thirty days after the date of the filing of a petition under chapter 7 of this

only does a chapter 7 debtor have a duty to file a statement of intention with regard to any debts secured by property of the estate, she must typically also perform that intention within 30 days of the first date set for her § 341 meeting.[15] § 521(a)(2)(A), (B). The § 521(a)(2)(A) and (B) time frames, however, have been interpreted as merely providing procedural guidelines. *See In re Bracamortes*, 166 B.R. 160, 162 (Bankr.S.D.Cal.1994). As such, the expiration of these time periods serve as a signal to creditors to pursue their rights against collateral securing debtors' debts. *Id.*

Section 704(a) identifies a chapter 7 trustee's duties and, in relevant part, provides:

> (a) The trustee shall—
>
> * * * *
>
> > (3) ensure that the debtor shall perform his intention as specified in section 521(a)(2)(B)[16] of this title.

title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property or that the debtor intends to reaffirm debts secured by such property; and
(B) within 30 days after the first date set for the meeting of creditors under section 341(a) or within such additional time as the court, for cause, within such 30-day period fixes, perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; except that nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, except as provided in section 362(h).

**15.** The Court finds it interesting that David, who did not fulfill any of his own § 521(a)(2) duties because he did not file a complete

In essence, David and ISUFCU argue that § 704(a)(3) imposes a duty on a chapter 7 trustee to verify whether a chapter 7 debtor has performed its stated intention, and, if not, to move the Court to compel the debtor to perform that intention. If a trustee does not do so, David and ISUFCU suggest the trustee forfeits the bankruptcy estate's interest in the property that is subject to the stated intention.

This argument assumes too much about the relationship of these provisions of the Code. Section 704(a)(3) requires nothing more of chapter 7 trustees than § 521(a)(2)(B) requires of debtors. Just as § 521(a)(2)(B) provides a "procedural guideline" for debtors, it provides nothing more for trustees. After the § 521(a)(2)(B) time period has passed, a creditor may ask the court to compel a debtor's performance, or it may opt for the less efficient alternative of requesting the chapter 7 trustee to petition the court for performance.[17] *See In re Bayless*, 78 B.R.

Statement of Intention, now desires to use § 521(a)(2), as incorporated into § 704(a)(3), to frustrate Trustee's fulfillment of his responsibilities.

**16.** The Bankruptcy Technical Corrections Act of 2010 updated § 704(a)(3) to correctly refer to § 521(a)(2)(B), rather than § 521(2)(B). Pub.L. 111–327, § 2(a)(24).

**17.** If an asset that is security for a debt is personal property, the Code provides an additional incentive to a debtor to comply with § 521(a)(2)'s timelines. *See Samson v. W. Capital Partners, LLC. (In re Blixseth)*, 454 B.R. 92 (9th Cir. BAP 2011). Section 362(h) provides that the automatic stay is terminated and the personal property is no longer part of the bankruptcy estate when it secures a debt and is not included within a statement of intention, or if the statement of intention is not complied with, before the § 521(a)(2) timelines expire. The remedy does not apply here because the Property is real property, not personal property.

506, 510 (Bankr.S.D.Ohio 1987) (indicating that, absent a creditor requesting the trustee's involvement, a trustee may assume a debtor has performed her stated intention). *See also In re Gregg*, 199 B.R. 404, 407–08 (Bankr.W.D.Mo.1996) (finding that, where a stated intent is to surrender property, a creditor is not required to seek a trustee's intervention to enforce the debtor's compliance); *In re Chavarria*, 117 B.R. 582, 585 (Bankr.D.Idaho 1990) (finding that, while a trustee may enforce a statement of intention, a court may order performance of a stated intention upon the request of a secured creditor without requiring the trustee as an intermediary), *overruled, in part, on other grounds, McClellan Fed. Credit Union v. Parker (In re Parker)*, 139 F.3d 668, 672–73 (9th Cir.1998); *but see Credithrift of America, Inc. v. Williams (In re Williams)*, 64 B.R. 737, 738 (Bankr.S.D.Ohio 1986) (holding a creditor must first seek the trustee's involvement before petitioning the court to compel a debtor's performance).

Nichole's Statement of Intention indicated she would surrender her interest in the Property to Midland. She did not do so. Neither Midland nor ISUFCU, the secured creditors as to the Property, ever requested that Trustee act to ensure that Nichole perform her stated intention. Instead, the secured creditors apparently elected to proceed to foreclose, and, with Trustee's cooperation, both sought relief from the automatic stay as to Nichole's interest in the Property. It was not until this adversary proceeding to avoid Nichole and David's transfers was commenced that ISUFCU raised any concern over Nichole's failure to comply with her stated intention.

When the § 521(a)(2)(B) deadlines expired, ISUFCU and Midland were free to either request Trustee to petition the Court, or to ask the Court themselves, to compel Nichole to surrender her interest in the Property to Midland. Neither did so. This is not surprising given that this course of action would not have assisted in David's (and ISUFCU's) efforts to avoid a Midland foreclosure, and to protect their interests in the Property via the refinance. The point is that Trustee did not forfeit Nichole's bankruptcy estate's interest in the Property by not, *sua sponte*, verifying whether the surrender had occurred and petitioning the Court to compel Nichole to perform.

Summary judgment is not appropriate under David and ISUFCU's forfeiture theory.

### Conclusion

David and ISUFCU's motion for summary judgment will be denied. The undisputed facts show that Nichole's one-half tenant-in-common interest in the Property became property of her bankruptcy estate as a matter of law on the date David's bankruptcy estate was closed. At no time has Trustee acted inconsistently regarding his duties in these cases, and the Court declines to equitably estop him from pursuing avoidance of Nichole's and David's transfers, if appropriate, under § 549(a). Finally, by not acting to ensure that Nichole performed her stated intention to surrender the Property to Midland, something that neither David nor ISUFCU apparently wanted to occur, Trustee did not somehow forfeit Nichole's bankruptcy estate's interest in the Property.

A separate order will enter. This action will proceed to trial.

### MEMORANDUM OF DECISION RE DEFENDANTS' MOTION FOR RECONSIDERATION

#### Introduction

On July 27, 2011, Defendants Idaho State University Credit Union and David

Herter ("Defendants") filed a "Motion for Reconsideration" ("Motion"), Dkt. No. 38, concerning this Court's June 21, 2011, Memorandum of Decision ("June 21 Memorandum") and its Order Denying Defendants' Motion for Summary Judgment ("June 21 Order"), Dkt. Nos. 36, 37. In the Motion, Defendants argue the Court made "an error in the law" in denying their summary judgment motion. Plaintiff, chapter 7[1] trustee R. Sam Hopkins ("Trustee"), filed an opposition to the Motion on August 15, 2011, Dkt. No. 43, and the Court held a hearing on the Motion on August 30, 2011, after which it took the issues under advisement. Having now considered the record, the arguments of the parties, and applicable law, the Court concludes the Motion should be denied.

### Background

As recited in the Court's June 21 Memorandum, the relevant facts and conclusions of law entered by the Court were:

1. During their marriage, David and Nichole Herter acquired and owned, as community property, a house in Pocatello ("the Property"). June 21 Memorandum at 11–16, Dkt. No. 36.

2. David and Nichole commenced state court divorce proceedings. *Id.* at 3–4. In connection with those proceedings, they agreed the Property "shall be sold and the net proceeds divided 50% to [Nichole] and 50% to [David]." *Id.* at 3.

3. David thereafter filed a chapter bankruptcy 7 case on November 7, 2008. *Id.* at 4. By doing so, both his and Nichole's community property interests in the Property became part of his bankruptcy estate. *Id.* at 16–18.

4. Nichole filed a separate chapter 7 bankruptcy case on November 19, 2008.

*Id.* at 4. Trustee was appointed to administer the assets in that case. *Id.* at 6.

5. The state court entered a divorce decree, incorporating the parties' agreement concerning the Property, on November 26, 2008. *Id.* at 24. Because of the automatic stay in David's bankruptcy case, while the divorce decree was effective to dissolve David and Nichole's marriage, the Court concluded the decree was ineffective to divide their property. *Id.* at 23.

6. David's bankruptcy case was closed on February 12, 2009. *Id.* at 4. The Property was not administered in David's case, and consequently, was deemed abandoned pursuant to § 554(c). *Id.* at 22–23.

7. When David's bankruptcy case was closed, the automatic stay in effect in that case terminated under § 362(c). *Id.* at 23–24. Because the divorce decree did not dispose of the now-former spouses' community property interests in the Property, but instead merely provided that each was entitled to an interest in the net proceeds of the Property if sold, David and Nichole each retained an undivided one-half interest in the Property. *Id.*

8. Pursuant to § 541(a)(5)(B), Nichole's one-half interest in the Property became property her bankruptcy estate. *Id.* at 25–26. Without authorization by the Court or Bankruptcy Code, Nichole later purported to transfer her interest in the Property to David, who in turn purported to grant a deed of trust on the Property to ISUFCU. *Id.* at 26–27. These are the transfers Trustee seeks to avoid under § 549(a) in this adversary proceeding as unauthorized post-petition transfers of property of Nichole's bankruptcy estate.

---

**1.** Unless otherwise indicated, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. All rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

## Discussion

### I. Standard for Resolving Defendants' Motion.

 Defendants filed a "Motion for Reconsideration." Dkt. No. 38. The Rules, however, do not contemplate a motion to "reconsider." *See Wood v. Loader (In re Loader)*, 424 B.R. 464, 466 (Bankr.D.Idaho 2009). Where a judgment has been entered, a motion to reconsider will be treated as either a motion to alter or amend the judgment under Rule 9023, or a motion seeking relief from the judgment or order under Rule 9024, depending on whether the timing requirements of Rule 9023 are met. *See id.* (quoting *In re Moore*, 01.4 I.B.C.R. 134, 134 (Bankr.D.Idaho 2001)). Here, however, no judgment has been entered. Rather, Defendants ask the Court to reconsider its June 21 Order. The Court therefore views Defendants' Motion as one seeking relief from the June 21 Order under Rule 9024.[2]

 Rule 9024 applies Fed.R.Civ.P. 60 to bankruptcy cases, under which the Court may relieve a party from an order, but only for certain, limited reasons. *See* Fed.R.Civ.P. 60(b). While Defendants have not specified which cause for relief specified in Fed.R.Civ.P. 60(b) applies here, their motion was for reconsideration "[p]ursuant to the Court's discretion found in 11 U.S.C. § 105 and Fed.R.Civ.P. 60(b)...." Motion at 1, Dkt. No. 38. Rule 60(b) is generally viewed as complimentary to bankruptcy courts' § 105(a) discretionary power, as courts of equity, to reconsider and modify their previous orders as long as intervening rights have not vested and there has not been reliance on the order. *Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.)*, 503 F.3d 933, 940 (9th Cir.2007). Among the Fed.R.Civ.P. 60(b) reasons for which a Court may grant relief from an order is a catch-all, found in Fed.R.Civ.P. 60(b)(6).[3] Errors of law fall within the catch-all, and a bankruptcy court may exercise its discretion to grant relief from a prior order based upon such an error. *In re Int'l Fibercom, Inc.*, 503 F.3d at 940–41.

### II. Analysis of Defendants' Motion.

Defendants assert three problems inhabit the analysis in the Court's June 21 Memorandum. Each is discussed in turn below.

> 1. *Does § 554(c) effectively transfer ownership of abandoned property "to the debtor?"*

Defendants first argue that, as a result of the operation of § 554(c),[4] Nichole was divested of all interest in the Property when it became part of David's bankruptcy estate, and was later abandoned. Defendants note that § 554(c) indicates property

---

**2.** Even if a judgment had been entered in this case, Defendants missed the deadline for filing a timely motion to alter or amend a judgment. *See* Rule 9023 (incorporating Fed. R.Civ.P. 59(e), which requires motions to alter or amend a judgment to be filed within 28 days of the entry of the judgment). Again, the Court's only option would be to view their Motion as a Rule 9024 motion for relief from the judgment. *See In re Loader*, 424 B.R. at 466.

**3.** Fed.R.Civ.P. 60(b)(6) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> * * * *
>
> (6) any other reason that justifies relief.

**4.** Section 554(c) provides:

> Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

is abandoned "to the debtor" when a bankruptcy case is closed. Therefore, they insist, any interest Nichole might have formerly held in the Property did not revert to her when David's bankruptcy case was closed, and, in turn, her bankruptcy estate acquired no interest in the Property. In other words, Defendants read § 554(c) to mean that an abandonment effectively transfers title in property to a debtor when a bankruptcy case is closed, regardless of the property's pre-petition ownership. The Court disagrees with this radical notion.

■■■ Simply put, abandonment does not affect title to property. *In re Manchester Heights Assocs., L.P.*, 165 B.R. 42,-44–45 (Bankr.W.D.Mo.1994); *In re R–B–Co., Inc. of Bossier*, 59 B.R. 43, 45 (Bankr. W.D.La.1986); *First Carolina Fin. Corp. v. Caron (In re Caron)*, 50 B.R. 27, 31–32 (Bankr.N.D.Ga.1984). Rather, in this context, abandonment is merely the "formal relinquishment of the property at issue from the bankruptcy estate," and nothing more. *See Catalano v. Comm'r of Internal Revenue*, 279 F.3d 682, 685 (9th Cir. 2002). A debtor has no greater or additional interest in abandoned property than he or she held at the time the bankruptcy petition was filed. *See Catalano*, 279 F.3d at 685 (explaining that a debtor's interest upon abandonment is that which he had at the filing of his petition); *Morlan v. Univ. Guar. Life Ins. Co.*, 298 F.3d 609, 617 (7th Cir.2002); *Dewsnup v. Timm (In re Dewsnup)*, 908 F.2d 588, 591 (10th Cir. 1990); *Newkirk v. Wasden (In re Bray)*, 288 B.R. 305, 307 (Bankr.S.D.Ga.2001).

■■■ Contrary to Defendants' view that abandonment under § 554(c) effectively

transferred ownership of the Property to David free and clear of any interest of Nichole, the abandonment in this case merely relinquished *possession* of the Property to David.[5] When David's bankruptcy case closed, the Property, remained subject to Nichole's ownership interest.

2. *Was the property division portion of David and Nichole's divorce decree void ab initio?*

■■■ Defendants' second contention is that the divorce decree, insofar as it purported to impact David's and Nichole's interests in the Property, was void *ab initio* because of the automatic stay in effect in both David's and Nichole's bankruptcy cases. Upon further review of the law, the Court agrees the provisions of the divorce decree dividing their property was not merely voidable and ineffective during the pendency of David's automatic stay, it was indeed void *ab initio*. *See Griffin v. Wardrobe (In re Wardrobe)*, 559 F.3d 932, 934 (9th Cir.2009) (indicating that "judicial proceedings" violating the stay are void); *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir. 1992); *In re Eastlick*, 349 B.R. 216, 225–26 (Bankr.D.Idaho 2004). Even so, the divorce decree was surely effective to dissolve David and Nichole's marriage. *See* § 362(b)(2)(A)(iv) (providing that the automatic stay does not operate to prohibit proceedings to dissolve a marriage, except to the extent the proceeding "seeks to determine the division of property that is property of the estate"). In other words, while the divorce decree dissolved the parties' marriage, it could not effectively dis-

---

5. The legislative history of § 554 reinforces this conclusion. It notes that, under § 554(a) and (b), property may be abandoned to any entity with a possessory interest in the property. S. Rep. No. 95–989, at 90 (1978), *reprint-ed in* 1978 U.S.C.C.A.N. 5787, 5878. The Court sees no reason why a different reading (*i.e.*, one other than that abandonment impacts only possession, not ownership, of property) should apply under § 554(c).

pose of their interests in any community property, including the Property.

 Given that they were now divorced, what was the status of the parties' rights in the Property at the time David's bankruptcy case closed? The answer is clear under Idaho law. When, for some reason, a divorce decree does not dispose of spouses' community property, they thereafter hold that property as tenants in common. *See Quinlan v. Pearson,* 71 Idaho 26, 225 P.2d 455, 456 (Idaho 1950); *Clark v. Clark,* 125 Idaho 173, 868 P.2d 501, 503 (Idaho Ct.App.1994); *Carr v. Carr,* 116 Idaho 747, 779 P.2d 422, 428 (Idaho Ct.App.1989). Here, because the portion of David and Nichole's divorce decree dividing their community property was a legal nullity, the decree could not dispose of their community property. When the Property exited David's bankruptcy estate, the couple's interests in the Property could not have been anything but one-half interests as tenants in common. Put another way, Nichole's one-half tenant-in-common ownership interest was a "result of" her and David's divorce decree, and, because she acquired that interest within 180–days of filing her bankruptcy petition, the interest became property of her bankruptcy estate. *See* § 541(a)(5)(B) (providing that a debtor's bankruptcy estate includes any property acquired by the debtor within 180–days of filing her petition, when acquired "as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree.").

3. *Did David and Nichole's divorce decree merely give each an interest in future net proceeds?*

Defendants' third argument is that, even if David and Nichole's divorce decree was, in whole or part, effective upon the termination of the automatic stay when David's case closed, all that decree gave David and Nichole was an interest in the net proceeds from some future sale of the Property. However, the Court need not analyze this aspect of Defendants' Motion.[6] As recognized above, the property division provisions of the divorce decree were void *ab initio.*

### Conclusion

This decision clarifies that the property division provisions in David and Nichole's divorce decree were not merely ineffective for the duration of the automatic stay in David's case, they were void *ab initio.* Even so, the fundamental conclusion reached in the June 21 Memorandum, that, when David's bankruptcy case closed, Nichole held a one-half tenant-in-common interest in the Property, remains a valid one.

Defendants' Motion will be denied in a separate order.

---

**6.** The Court also fully analyzed this contention in the June 21 Memorandum:

> [W]hen fairly construed, the divorce decree in this case did not completely dispose of the parties' community interests in the Property. Recall, it provides: "[The Property] shall be sold and the net proceeds divided 50% to the Wife and 50% to the Husband." Missing from the decree is any

indication of who owns the Property between the effective date of the divorce and when it is sold.

June 21 Memorandum at 24, Dkt. No. 36. Because the divorce decree did not dispose of David and Nichole's community property, the Court indicated that, pursuant to Idaho law, they thereafter owned the Property as tenants in common. *Id.*